SOMMERVILLE, J.
The People’s Bank of Mobile alleges itself to be an ordinary creditor of the defendant company; that the directors and other officers of that corporation are jeopardizing the rights of its creditors by grossly mismanaging the business; that the property of the corporation has been seized under judicial process through fraud and collusion between the defendant corporation, its officers and stockholders, and a named creditor. It sets forth the acts of mismanagement, collusion, and fraud in its petition, and it asks for the appointment of a receiver to the defendant to take charge of and manage the affairs of the corporation for its benefit and for the benefit of other creditors.
Defendant filed an exception of no cause or right of action, based upon the ground that plaintiff was not a creditor, and, if a creditor, that the acts of alleged mismanagement occurred prior to the time that plaintiff became such creditor. The exception was overruled. Defendant answered, denying the allegations of plaintiff.
Judgment was rendered for plaintiff, and two receivers were appointed for the defendant corporation. Defendant has not appealed; but the St. Louis Union Trust Company, alleging itself to be a'creditor of the defendant company, has appealed.
Plaintiff alleges that it is the trustee of the mortgage bondholders of the Shreveport Brewery, amounting to $71,500 in outstanding bonds, and that by certain acts of compromise and sale between the Shreveport Brewery and its stockholders, on the one part, and of defendant, the Shreveport Ice & Brewing Company, on the other part, the latter assumed the payment of the interest on the outstanding bonds.of the Shreveport Brewery held by plaintiff and the payment of the taxes due on the brewery property in consideration of a release of a certain claim of $35,000 due by defendant to the Shreveport Brewery, and the transfer by the stockholders of the Shreveport Brewery of more than 75 per cent, of the capital stock of the Shreveport Brewery to the defendant, and that plaintiff was notified of said assumption by defendant, and it accepted same. This act of compromise was said to be attached to the petition, but it was not.
As the allegations in the petition are clear that plaintiff is a creditor of defendant, and as to how it became a creditor, they must be taken as true for the purposes of the exception of no cause and right of action filed by defendant.
As the acts of mismanagement enumerated in the petition are alleged to have been parts of a fraudulent scheme carried out by collusion between defendant, its officers and stockholders, and a creditor thereof, which resulted in the seizure of all of defendant's property under judicial process, which seizure was made while plaintiff was a creditor, plaintiff alleges a cause of action.
The record presents a rather anomalous condition of interlocking corporations contracting with one another; one holds about all of the stock of another, and an individual, or a set of individuals, holds all. of the stock and bonds of the holding corporation.
The Shreveport Brewery was a Louisiana corporation organized in 1903. It issued mortgage bonds, and also $300,000 of capital stock. It was engaged in brewing beer and manufacturing ice in Shreveport, La., until it was absorbed in 1905, under a ten-year lease, by defendant, the Shreveport Ice & *805 Brewing Company. Under the terms of that lease the latter company was obligated to operate the plant of the former company together with its own, and to divide the profits in the proportion of 65 per cent, of the profits to itself and 35 per cent, to the Shreveport Brewery. Out of the 35 per cent, going to the Shreveport Brewery the lessee was to pay the yearly taxes on the property of the Shreveport Brewery, and the interest semiannually on the outstanding bonds of said corporation, amounting to $71,500, in the hands of plaintiff as trustee. The Shreveport Ice & Brewing Company thus became the codebtor of the Shreveport Brewery to the bondholders of the Shreveport Brewery.
The lessee operated the Shreveport Brewery for six or seven months at the beginning of the lease; but it did not operate the ice plant at all.
Under that contract, the Shreveport Brewery went out of business for ten years, and the Shreveport Ice & Brewing Company became its representative.
The Shreveport Ice & Brewing Company had absorbed the Shreveport Brewery for ten years; and the latter was entirely out of business, and was not producing anything with which to pay interest on its bonds. The object of the Shreveport Ice & Brewing Company in agreeing to pay this interest evidently was to hold off the bondholders from seizing the property of the Shreveport Brewery on which they held a mortgage, and also to prevent the use of that brewery property by any one during the ten year period. The Shreveport Ice & Brewing Company paid the interest to the trustee of the bondholders as agreed upon.
Shortly before the expiration of the lease the Shreveport Ice & Brewing Company acquired more than 75 per cent, of the stock.of the Shreveport Brewery at 20 cents on the dollar, with money furnished by the AnheuserBusch Brewing Association of St. Louis.
In taking the stock of the Shreveport Brewery in 1915 the Shreveport Ice & Brewing Company stipulated that:
The “officers, directors, and stockholders of the Shreveport Brewery shall not, for a period of ten years after they so sell their shares of stock in said Shreveport Brewery, engage, either directly or indirectly, as proprietors, partners, stockholders, agents or in any other manner, in the business of either manufacturing, selling, or dealing in ice or beer, or in the business of conducting or selling cold storage facilities in any form, or in the brewing business, within the city of Shreveport, La., or in any other part of Caddo parish, La.”
In this sale of stock it was further stipulated that “all of the ten directors and officers of the Shreveport Brewery” should deposit their written resignations as directors and officers of the Shreveport Brewery in the South Side Bank of St. Louis. Thus all of the officers of the Shreveport Brewery passed out of office; and the stock representing all of the property and assets of the Shreveport Brewery passed into the hands of the Shreveport Ice & Brewing Company.
The Shreveport Brewery now holds a mere paper charter. It was absorbed by the Shreveport Ice & Brewing Company, and it became a part of the latter. Even the stockholders of the Shreveport Brewery were bought by the Shreveport Ice & Brewing Company, or,. rather, they were deprived by the latter of the right to engage in the ice, cold storage, and brewing business for a term of ten years.
In acquiring the stock of the Shreveport Brewery the Shreveport Ice & Brewing Company did not acquire the mortgage bonds of the Shreveport Brewery, which are held by plaintiff, as trustee of the bondholders of that corporation. But in taking over the property of the Shreveport Brewery it as-' sumed the payment of the interest on the bonds of that corporation in discharge of an indebtedness of $35,000. The real estate belonging to the Shreveport Brewery, or to the stockholders of that corporation, passed from *807 them to the Shreveport Ice & Brewing Company burdened with the mortgage in favor of the bondholders, while the paper title to that abandoned real estate stood in the name of the Shreveport Brewery at the time of filing this suit.
In assuming the payment of the interest oh the bonds of the Shreveport Brewery, the Shreveport Ice & Brewing Company became a codebtor with the Shreveport Brewery on the mortgage indebtedness held'by plaintiff, to the extent of the interest on the bonds, and pilaintiff is an ordinary creditor of defendant, and it may ask for the appointment of a receiver for the latter.
The agreement between the Shreveport Ice & Brewing Company and the Shreveport Brewery was in part as follows:
“In consideration of said purchase [of more than 75 per cent, of the stock of the Shreveport Brewery at 20 cents on the dollar], and of covenants and agreements hereinafter contained, on the part of the party of the second part [the Shreveport Brewery]; the party of the first part [the Shreveport Ice & Brewing Company] covenants and agrees to and with the party of the second part that party of the first part will pay, or cause to be paid, as and when the same becomes due and payable, all interest on the mortgage bonds of the party of the second part now outstanding, and also all lawful taxes levied on or assessed against the property of the party of the second part situated in the city of Shreveport, state of Louisiana,” etc.
It was further agreed:
“That the outstanding mortgage bonds of party of the second part do not exceed an aggregate par or face value of $71,500 of principal” out of a total of $125,000' authorized to be issued.
This contract is of date March 22, 1915, and refers to a prior one, of date February 6, 1915, between the Shreveport Ice & Brewing Company and the stockholders of the Shreveport Brewery, for the sale of the stock of the latter corporation, in which it was stipulated that the stockholders should deposit with a designated hank—
“a certificate of the trustee under said existing deed of trust or mortgage of the Shreveport Brewery (the People’s Bank, Mobile, Ala.) evidencing the fact that at that time the said trustee shall still hold in its custody for the benefit of the Shreveport Brewery bonds secured by said deed of trust or mortgage of an aggregate par value of $53,500, together with all the coupons originally attached thereto.”
One of the objects of the contracts was to pay the interest on the bonds of the Shreveport Brewery. And the bondholders are therefore ordinary creditors of the defendant. They have accepted it as their debtor, and they have a right of action against it. If they have not, the object of the contract would be defeated. The agreement to pay the interest was clearly intended for the benefit of the Shreveport Ice & Brewing Company and the bondholders of the Shreveport Brewery. If the interest on. the mortgage bonds was not paid regularly, the mortgage would be matured and foreclosed upon, and tbe Shreveport Ice & Brewing Company would lose possession of tbe Shreveport Brewery, and the lately acquired stock therein would be without value.
In assuming to pay a portion of the mortgage resting on the property of the Shreveport Brewery, that is, the interest on the mortgage bonds, the Shreveport Ice & Brewing Company made a stipulation pour autrui in favor of the bondholders, which may he enforced by the trustee of the bondholders. Mayor v. Bailey, 5 Mart. (O. S.) 321; Mitchell v. Cooley, 5 Rob. 240; Brandon v. Hughes, 22 La. Ann. 363; Conte v. Cain, 33 La. Ann. 968; DeL’Isle v. Moss, 34 La. Ann. 167; Scionneaux v. Waguespack, 32 La. Ann. 283; Levy v. Desposito, 133 La. 130, 62 South. 599.
Besides, the Shreveport Ice & Brewing Company has paid the interest coupons on the bonds falling due at three different times into the hands of the trustee since the agreements were entered into. It has refused to pay the coupons falling due on and since January 1, 1917.
The bondholders did not appear and sign the contracts between the Shreveport Ice & *809 Brewing Company, on the one side, and the Shreveport Brewery, on the other, but they signified in writing their acceptance of the stipulation in their favor to the parties to those contracts by and through their trustee. The Shreveport Ice & Brewing Company is bound by those contracts as a codebtor of the Shreveport Brewery.
[1-3] The law on the matter is contained in articles 1902 and 1890, C. C., and article 35, C. P., and is as follows:
“A contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, cannot be revoked as to the advantage stipulated in his favor without his consent.” C. C. 1902.
“A person may, also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.” C. C. 1890.
“An equitable action is that which does not immediately arise from a contract, but from equity in favor of a third person, not a party to it, and for whose benefit certain stipulations have been made; thus, if one stipulated in a contract entered into with another person, and as an express condition of that contract, that this person should pay a certain sum on his account, or give a certain thing to a third person, not a party to the act, that third person has an equitable action against the one who has contracted the obligation, to enforce the execution of the stipulation.” G. P. 35.
[4] The agreement to pay the bondholders’ interest on the bonds held by them was a stipulation pour autrui in their favor. The contract cannot be interpreted in any other way.
The Shreveport Brewery had virtually passed out of existence at the date of the contract ; its officers and board of directors had tendered their resignations; its stock was owned by the Shreveport Ice & Brewing Company, one of the contracting parties; and it had been abáorbed by the Shreveport Ice & Brewing Company. It had no debts except that due its bondholders, and no assets. The Shreveport Ice & Brewing Company was in terested in pajung the interest on the bonds, and thus prevent the mortgage from being foreclosed upon for a time. It therefore agreed to pay to the bondholders the interest on the mortgage bonds.
The Shreveport. Ice & Brewing Company owed the Shreveport Brewery $35,000; but, as it owned the Shreveport Brewery, it was unnecessary to pay this amount out of one pocket into another. The intention of the parties to the contract was for the Shreveport Ice & Brewing Company to pay this amount of money to third persons, the bondholders, for reasons favorable to the Shreveport lee & Brewing Company. The Shreveport Brewery had no personal or appreciable interest in the matter.
The stipulation was accepted by the bondholders ; and it is binding on the defendant.
Defendant cites the case of Allen & Currey v. Waterworks Co., 113 La. 1091, 37 South. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471, as being opposed to the position herein taken. That was a suit by a citizen of Shreveport under a contract between the city and the waterworks against the defendant company for damages by fire suffered by plaintiff through the alleged fault of the defendant. It was there held that the contract was with the city in its corporate capacity, and not in favor of the inhabitants of the city. It did not contain a stipulation pour autrui.
In referring to that and similar cases, the court say in Levy v. Desposito, 133 La. 126, 62 South. 599:
“What was said in the latter cases has to be read in the connection in which it was said.”
That opinion is not applicable to the contract involved in this case.
Appellant urges that the act of defendant in compromising with the Shreveport Brewery is ultra vires the charter of defendant. It appears from the evidence that near the expiration of the lease before referred to a settlement thereunder was to be made, that the Shreveport Brewery claimed from defendant $64,000 or $65,000, and that defendant finally *811 admitted an indebtedness of $35,000 which it was willing to pay during a certain extended period to the bondholders of the Shreveport Brewery in the form of interest on the mortgage bonds of the Shreveport Brewery, as it fell due semiannually.
This transaction was one to discharge an indebtedness incurred by the managers of defendant corporation, which on its face was not ultra vires; and the terms of payment were probably the best that could be made. The semiannual payments had to be made by defendant, so it agreed to pay to the bondholders of its nominal creditor, the Shreveport Brewery.
It was admitted on the trial:
“That more than 25 per cent, of the bondholders of the .Shreveport Brewery had made de-, mand upon the People’s Bank, trustee, for the protection and enforcement of the rights of the said bondholders by appropriate legal process.”
The acts of gross mismanagement which have jeopardized the rights of creditors of defendant and the fraud and collusion between it, its officers, and stockholders with some of its creditors, culminating in the seizure of all the property under judicial process by the St. Louis Union Trust Company, one of its creditors, and the appellant herein, are ably enumerated in the opinion of the trial judge. It is unnecessary to repeat them here.
Those acts, if taken separately, might be taken as errors of judgment on the part of the management of defendant company, which resulted in great financial loss to it. But, when taken collectively, they are acts of gross mismanagement which resulted in the seizure of all of defendant’s property under judicial process, when that seizure could and should have been avoided. The defendant was a money-making concern, and it could have paid the semiannual interést on its bonded indebtedness if its funds had not been diverted to other purposes. Its failure to pay the interest caused the maturity of $240,000 of mortgage bonds, with interest; and a seizure of all its property resulted. This seizure embraced not only the property mortgaged, but other property acquired by defendant after the execution of the mortgage, and defendant acquiesced in that seizure in its entirety.
The debts paid by defendant, to the exclusion of the interest on its bonds, were, in part, for unnecessary and extravagant purchases and expenses and unmatured obligations, which should not have been incurred, and the payment thereof could undoubtedly have been postponed. Some of these debts were paid to the holder of the mortgage bonds, instead of using that money to pay the interest on those bonds.
These proceedings suggest collusion and fraud between defendant and the seizing creditor.
The district judge was of the opinion that a receiver might straighten out the financial difficulties of defendant, and save it from destruction. He has therefore appointed receivers to it.
Judgment affirmed.