THOMPSON, J.
 

 This is a suit by the holders of certain mortgage notes against the maker for the difference between the aggregate amount of the notes and the net proceeds of the sale of the mortgaged property.
 

 The defendant by way of exception of no cause of action pleaded that he had been dis
 
 *679
 
 charged, (1) because the debt had been novated by the acceptance by the creditor of the obligation of the vendees of the maker of the notes, who had assumed the payment in their purchase of the mortgaged property, (2) by the extension of the time of payment of said notes granted by the holders to the assumers without the consent of the maker, and (3) that the extension of the time for the payment of the notes constituted a material alteration of the notes which operated a discharge of the maker.
 

 The district judge overruled the first contention but sustained the other two grounds of exception and dismissed the suit.
 

 The record shows that the plaintiffs sold to defendant Van Hoose on December 6, 1918, the Bertha Villa Plantation situated in Tensas parish.
 

 The price was $65,000, of which $15,000 was paid in cash, and for the balance Van Hoose executed eleven promissory notes, the first for $5,000 and the remaining ten for $4,500 each. The first note was payable on March 10,1919, and the others annually thereafter beginning on January 1, 1920. All of the notes stipulated 6 per cent, per annu,m interest from December 1, 1918, and it was agreed in the act of mortgage, that upon the nonpayment of any of said notes at maturity -the vendors or any future holder of said notes shall have the option or right to declare all of said notes due and payable.
 

 On January 9, 1920, Van Hoose sold the mortgaged property to Mitchell and Jason Taylor for $88,257.50. Of this price $45,125 was paid in cash, and for the balance the Taylors assumed the payment of the mortgage notes executed by Van Hoose and held by his vendors which were still unmatured.
 

 On December 28, 1921, the payment of each of the notes was extended two years from the original date of maturity. This extension was agreed to by the plaintiffs as holders and by the Taylor Brothers.
 

 The extension was written on the back of each note and was signed by the plaintiffs, but Van Hoose, the maker, was not a party to the agreement of extension.
 

 In November, 1927, default in payment of some of the notes having been made, the plaintiffs caused the mortgaged property to be seized and sold under executory process against Taylor Brothers. The defendant was not made a party to that proceeding.
 

 The property was adjudicated to the plaintiffs on January 7, 1928, at the price of $32,-150, and on the 24th of that month the present suit was filed.
 

 The plaintiffs had the legal right to proceed directly against the Taylors to enforce their. mortgage debt and by this proceeding they did not novate the debt.
 

 Nor did the agreement between the plaintiffs a'nd the Taylors to extend the payment of the notes have the effect in law of substituting the Taylors as the sole obligors of the mortgage debt.
 

 It is true novation by the substitution of a new debtor can take place without the consent of the original debtor, but the intention of the creditor to so novate must be expressed or clearly indicated.
 

 “It [novation] is never presumed. The intention must clearly result from the terms of the agreement or by a full discharge of the original debt. Novation by the substitution of a new debtor can take place without the consent of the debtor, but the delegation does not operate a novation, unless the creditor has expressly declared that he intends to discharge the delegating debtor. * * * The mere indication by a debtor of a person who
 
 *681
 
 is to pay in Ms place does not operate a novation.” Latiolais v. Citizens’ Bank of Louisiana, 33 La. Ann. 1444, and authorities there cited.
 

 Under these authorities it is clear there was no novation on the part of the creditor in the instant ease.
 

 It is conceded that when the Taylors assumed the payment of the mortgage debt they became primary obligors and bound themselves in solido with the maker of the notes. As a matter of fact, the Taylors in accepting the deed from Van Hoose expressly declared that they assumed the mortgage debt in solido with the said Van Hoose, and the plaintiffs in their foreclosure against the Taylors alleged that the said Taylors had bound themselves in solido with Van Hoose for the payment of the debt.
 

 The Taylors therefore were not only primary obligors in solido with Van Hoose for the payment of the debt to the holders of the notes, but they were likewise debtors of Van Hoose for the unpaid portion of the-price which they agreed to pay in assuming the debt due to the plaintiffs. '
 

 In these circumstances there can be no, doubt that on the payment of the debt by^ Van Hoose to the plaintiffs he would have been legally subrogated to all of the rights of his vendors against the Taylors.
 

 In the case of Gay v. Blanchard, 32 La. Ann. 497, it was said:
 

 “We take the rule to be that,where two persons are bound to a third, for the same debt, and where one of these obligors has,upon payment of the debt, a right of subro-' gation thereto, and of recourse for the amount paid, upon his co-obligor, any contract between the creditor and the ultimate debtor, whereby delay is granted, * * * will discharge the obligor entitled to such recourse and subrogation if Ms consent be not obtained. The creditor in such case must maintain a position which will enable him to subrogate the party paying to all the original rights, privileges, and actions incident to the debt.”
 

 In the same ease on rehearing it was said that where the obligors are bound by separate contracts to the creditor for the same debt, the creditor must have accepted both obligations and be privy to, and have knowledge of, the contract out of which grows the right of recourse of one of the debtors upon the other. - .
 

 In the instant .case the plaintiffs not only had knowledge of the contract between Van Hoose and the Taylors, but they accepted .that contract, treated with the Taylors as their debtor in extending the time for the payment of the debt, and proceeded against them in the foreclosure on the mortgage property.
 

 , Under the rule of jurisprudence referred .to, there can be no doubt that Van Hoose had ‘the legal right to have the mortgage debt promptly paid at the time stated in the notes ¡and the extension of time without his consent not only destroyed his right of recourse, but imposed upon Mm the additional obligation to pay an additional interest on the un'matured notes for the period of extension.
 

 It is no answer to say that Van Hoose could have preserved his right of subrogation by paying the notes at their original maturity.
 

 What was said in the Gay Case is very pertinent here. It may be that Van Hoose on payment of the notes could have enforced Ms mortgage against the Taylors, notwithstanding the agreement of extension to which he was no party, but it is manifest that the
 
 *683
 
 contract between the Isaacs and the Taylors in extending the plaintiffs’ mortgage was binding on Tan Hoose and deprived him of his subrogation and legal right to proceed on the original mortgage debt for at least tw’o years.
 

 As was the result in the Gay Case, so we say here, the extension granted the Taylors operated under the law a discharge of Van Hoose.
 

 The counsel for plaintiffs practically concede the rule to be as stated, but they contend that the jurisprudence of a majority of the other states is to the contrary and for the sake of uniformity this court should follow the rule adopted in other jurisdictions.
 

 It is further contended that the Negotiable Instruments Law (Act No. 64 of 1904) is the paramount law and the only law concerning negotiable instruments, and hence contradictions to its provisions cannot be sanctioned and must be avoided.
 

 We have not found from a careful study of the statute referred to that its provisions supersede the rule adopted by our own jurisprudence.
 

 Section 120 of the act, among other things, provides that a party secondarily liable on an instrument is discharged by any agreement binding upon the holder to extend the time of payment, or to postpone the holder’s right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.
 

 There is no provision in the statute which expressly and specifically declares that an extension of time in favor of one primary, obligor in solido discharges other obligors similarly bound.'
 

 Section 119 of the statute deals exclusively with the manner of discharging a negotiable instrument itself and nowhere provides for a discharge of the parties to such an instrument. It follows, of course, as a legal consequence that the discharge of a negotiable instrument in one of the ways provided discharges all parties bound thereon, whether they be primary or secondary obligors.
 

 In title 4 of the statutes under the heading of general provisions, it is declared in section 196 that in any case not provided for in the statute the rules of the law merchant shall govern.
 

 As we have observed, there is no specific provision in the statute which deals with the precise question here presented, hence under the general provision referred to we are justified in following the rule laid down in our own jurisprudence. . That rule in a way has become a rule of property, accepted and acted upon in the commercial affairs of this state, and ought not to be set aside without due notice, under the pretext of conforming to the jurisprudence of other states.
 

 It will be observed further that there is nothing in the statute under consideration which provides that the conventional discharge in favor of one of the codebtors in solido discharges all the others, unless the creditor has expressly reserved his rights against the latter.
 

 Vet in the case of J. I. Case Threshing Machine Co. v. Bridger, 133 La. 754, 63 So. 319, the court in the absence of any express provision, and in view of section 196 of the negotiable instrument statute, applied the general law of this state on the subject and held that the discharge of one of the codebtors in solido discharges all the others.
 

 
 *685
 
 Section 124 of Act No. 64 of 1904 provides that where a negotiable instrument is materially altered without the assent of all parties thereon, it is avoided except as against a party who has himself made, authorized, or assented to the alteration and subsequent indorsers.
 

 And in section 126 it is declared, among other things, that any alteration which changes the time of payment or the sum payable, either for principal or interest, is a material alteration.
 

 The change of the time of the payment of the notes and which made the maker’s obligation more onerous, in that- he was called upon to pay two years additional interest, was a material alteration and clearly within the contemplation of the statute.
 

 The interest on the whole debt for the first period of extension amounted to $5,400.
 

 If a change of the date of maturity of the notes and the imposition of the additional interest is not a material alteration of the notes under the language of the statute, then we are unable to conceive of a change which could be classified as a material alteration.
 

 The fact is unimportant that the change was affected by noting the same on the back of the notes.
 

 In Morris v. Executors of Cain, 39 La. Ann. 712, 1 So. 797, 2 So. 418, it was held that the purport of a bill or note is to be collected from the eight corners of it; and a memorandum on the back, affecting its operation, must be regarded as if written on its face.
 

 The change in the instant case is something more than a mere memorandum, it is a positive declaration written and signed on the back of each note by the plaintiff holders.
 

 Our conclusion is that the defendant has been discharged from his obligation for the reasons herein stated.
 

 The judgment appealed from is therefore affirmed, at plaintiffs’ cost.