MILLS' SUCCESSION v. MANASSEH et al.*
No. 4514.

Court of Appeal of Louisiana, Second Circuit.
March 31, 1933.

Dimick & Hamilton, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

TALIAFERRO, Judge.

On January 17, 1927, Oscar G. Manasseh, a defendant, executed a promissory note for $1,742.67, payable to his own order and by him indorsed, due on or before three years from date, with 7 per cent. per annum interest from date. There is a stipulation in the note that payments thereon shall be at the rate of $20 per month beginning one month from its date. To secure payment of this note with 10 per cent. attorney's fees, the maker, on the date of note, by authentic act, specially mortgaged and hypothecated certain real estate in the city of Shreveport. Thereafter, to wit, September 28, 1927, he sold the mortgaged property to J. S. Waldron, defendant, who, according to the allegations of plaintiff's petition, assumed the balance due on the note. The deed from Manasseh to Waldron was not offered or filed in evidence, and we are left to some extent to conjecture as to the exact terms of the assumption referred to. In connection with the transaction between Manasseh and Waldron, the latter did sign said mortgage note of the former on its face, under the signature of the original maker. This note, immediately after its execution by Manasseh, was acquired by Mrs. Penelope Ardis Mills. Payments thereon were regularly made to February 2, 1931, reducing the principal to $1,242.79.

This suit was instituted by the executor of the succession of Mrs. Penelope Ardis Mills against both Manasseh and Waldron to recover judgment against them in solido for the balance due on said note with recognition of the special mortgage securing its payment. It is alleged in the petition that " * * * Oscar Manasseh sold and conveyed said property to defendant, J. S. Waldron, who expressly assumed the payment of the balance due under this mortgage, together with all other obligations thereunder, and said deed which is recorded in Book 243, page 673, is made a part hereof by reference."

Waldron did not answer the suit, and issue was joined as to him by judgment by default. Manasseh answered. He admits the balance due on the note to be the amount sued for and that the representative of Mrs. Mills' succession is holder thereof. He avers that on September 28, 1927, he sold said property to J. S. Waldron, who, at the request of W. W. Newcomb, duly authorized agent of the late Mrs. Mills, assumed said mortgage and signed the said note, which had originally been executed by him (said Manasseh), and thereby became the primary obligor thereon, that, after purchasing the property, Waldron

made all the monthly payments on the note until it matured by its own terms; that he (Manasseh) was not notified of the nonpayment of the note at its maturity, and no demand was made on him or Waldron then to pay the note in full, but payments thereafter were accepted from Waldron; that said Waldron discontinued making monthly payments on the note after having been granted extensions from time to time by said Newcomb, agent of Mrs. Mills; that said agent of Mrs. Mills, holder of the note, in March, 1931, informed Waldron that he would not press collection thereof so long as he kept up the payments on a first mortgage against the property held by a building and loan association in Shreveport.

Defendant further alleges that, " * * * after the assumption by the said J. S. Waldron of the payment of said note and mortgage, that your defendant, Oscar G. Manasseh, became secondarily liable thereon and that he was entitled to demand and notice when the said note was not paid at its maturity on September 28th, 1930, and that the extensions which were granted the said J. S. Waldron, as above set forth, were granted the said J. S. Waldron without the knowledge or consent of your defendant, Oscar G. Manasseh and that he was thereby released from any obligations under the said note or mortgage."

Defendant further avers that since the maturity of the note sued on property values in the city of Shreveport have declined materially, and that the failure of Mrs. Mills to notify him of Waldron's default in payment of the note at maturity has prejudiced him, in that the mortgaged property has greatly depreciated in value, and interest has accumulated; that, had he been called upon to pay the note at maturity, he could have easily done so.

The lower court rejected plaintiff's demands against Manasseh, but gave judgment against Waldron as prayed for. Plaintiff appealed.

The gravamen of the defense is reflected from that portion of the answer quoted above. If, after Waldron purchased the property from Manasseh on September 28, 1930, Manasseh's liability to Mrs. Mills on the note was reduced to a secondary obligation, then his position that he was entitled to notice of nonpayment thereof by Waldron, and demand for payment, is well taken, for these requirements are not waived in the note or the mortgage securing its payment; and, if his liability became secondary in the manner and for the reasons by him assigned, any definite extension of time of payment of the note released him.

Manasseh does not contend that he was automatically released from liability on the note because Waldron signed it and assumed the mortgage securing its payment, nor because Mrs. Mills accepted payments thereon from Waldron after September 28, 1927, but does contend that, because of these facts, a transition resulted whereby his responsibility shifted from that of a primary obligor to that of a secondary obligor, and that this secondary liability has been destroyed because the note has been extended without his consent or sanction, and because he was not notified of Waldron's default on the note, and no payment from him demanded, when it matured.

He relies upon the decision in Isaacs et al. v. Van Hoose, 171 La. 676, 131 So. 845, 847, as sustaining his contention of secondary responsibility after Waldron purchased the property. We do not think this case supports the contention, but, on the contrary, sustains the proposition that Waldron, when he signed Manasseh's note and assumed the mortgage, became a primary obligor, and in solido bound with Manasseh for payment of the note. His assumption did not affect the status of Manasseh as maker. This conclusion is supported by the following excerpts from that opinion:

"It is conceded that when the Taylors assumed the payment of the mortgage debt they became primary obligors and bound themselves in solido with the maker of the notes. * * *

"The Taylors therefore were not only primary obligors in solido with Van Hoose for the payment of the debt to the holders of the notes, but they were likewise debtors of Van Hoose for the unpaid portion of the price which they agreed to pay in assuming the debt due to the plaintiffs."

The outstanding mortgage note of Manasseh, when assumed by Waldron, became a part of the purchase price of the sale between them, and both became primarily and solidarily responsible for its payment in the hands of Mrs. Mills, and, in addition, at same time, Waldron became a debtor of Manasseh to that extent. Schiro v. Fallo, 13 La. App. 369, 127 So. 113; People's Bank v. Shreveport I. & B. Co., 142 La. 802, 77 So. 636; Rhys v. Moody, 163 La. 1039, 113 So. 367; Simon v. McMeel, 167 La. 243, 119 So. 35; Isaacs et al. v. Van Hoose, 171 La. 681, 131 So. 845; Civ. Code, arts. 2091, 2092.

Being primarily bound on the note as maker, and that status not having been altered or affected, as regards the holder of the note, by Waldron's commitment to responsibility thereon, Manasseh was not released if not notified of Waldron's default. The same may be said of the failure to demand payment of him. He knew the whereabouts of the note, and could have easily kept in touch with the progress Waldron was making towards its payment.

The Isaacs Case, supra, and decisions cited therein, holds that, " * * * where two persons are bound to a third, for the same

debt, and where one of these obligors has, upon payment of the debt, a right of subrogation thereto, and of recourse for the amount paid, upon his co-obligor, any contract between the creditor and the ultimate debtor, whereby delay is granted, * * * will discharge the obligor entitled to such recourse and subrogation if his consent be not obtained. The creditor in such case must maintain a position which will enable him to subrogate the party paying to all the original rights, privileges, and actions incident to the debt."

Therefore, in this case, if it be found that Mrs. Mills or her agent granted extensions of time to Waldron to pay the note in question, without the consent of Manasseh, this would release him, for such would amount to a material alteration of the note. Section 125 of Act No. 64 of 1904. It is indispensable in such a case that the creditor, who would retain intact his rights against the original obligor, perform no act that would prevent the original obligor at any time from paying the obligation and being subrogated to the rights, mortgages, and privileges of the creditor against the ultimate debtor.

Apparently the note was intended to mature three years from its date, January 17, 1927, but it is stipulated therein that it shall be paid at the rate of $20 per month, "including interest on balance of principal," and this is amplified materially by the mortgage which provides that "This mortgagor binds and obligates himself to pay monthly, beginning one month after this day, the sum of $20.00, which said monthly payment shall include interest on the balance of the principal each month as paid, provided that the entire note shall become immediately due and payable at the option of the holder thereof in case said monthly payment shall become two months in arrears."

■ Notwithstanding the stipulation in the note that the maker promised to pay same in three years, it is our conclusion, based upon the other stipulation in the note, the above-quoted stipulation in the mortgage, and the attitude of all the parties towards the note and mortgage, that it was their understanding that the note with accumulating interest thereon be retired at the rate of $20 per month. As a rule the purport of a note must be determined from the contents within its eight corners (Morris v. Cain's Executors, 39 La. Ann. 712, 1 So. 797, 2 So. 418), but contemporaneously executed written agreements on same subject-matter may be construed together in seeking to determine what was in the contemplation of the parties thereto.

*"Construing with Mortgage.* Where a note is executed at the same time as a mortgage given to secure its payment, they are to be read and construed together, as parts of the same transaction, and hence the terms of the note may be modified by the mortgage." 8 C. J. 199.

It would have required several years in excess of three to have paid the note, including interest, at $20 per month, as during this period only $720 would have been paid. The stipulation in the mortgage that the note could be made to mature at any time two or more months' payments were in arrears, lends force to our reasoning.

The note and attached rider discloses that payments were regularly made monthly from October, 1927, first month after Waldron purchased, to February 2, 1931, when he made the last payment, and that from each payment interest on principal for the preceding month was deducted and the balance allocated to the principal. This was the method applied subsequent to January 17, 1930, as well as prior to that date. No imputation of interest was made for future months. Invariably it was applied to the month preceding.

In 8 Corpus Juris, p. 410, footnote, verbo "Inconsistent Provisions," we find the following, which supports the views herein expressed, viz.: "A note for eight hundred dollars, commencing '90 days after date, we promise to pay $800', and thereafter providing, 'Payments to be $10 per month, or more if maker desires,' is an installment note, payable ten dollars per month. Crowe v. Beem, 36 Ind. App. 207, 75 N. E. 302. (2). The fact that a note for six hundred and fifty dollars is payable in monthly installments of eight dollars 'or more' is not inconsistent with a provision fixing its maturity at five years after its date, there being no limitation to the eight dollar payments. Turpin v. Gresham, 106 Iowa, 187, 76 N. W. 680."

Under the stipulation in the mortgage, the note fell due after two monthly installments were in arrears, at the option of the holder. As the last payment by Waldron was made February 2, 1931, maturity of note could not have attached before April 2 thereafter, and then only if the holder so desired.

■■ The evidence leaves no doubt in our mind that no extension of time to pay was granted Waldron after February 2d. He testified that Mr. Newcomb told him that, as long as he met the monthly payments due to the building and loan association on first mortgage against the property, extension would be given him on the Manasseh note. Newcomb denies this positively. Waldron made some payments to the building and loan association, he says, after February, 1931. It is evident that the delay on the part of Mrs. Mills and the representative of her succession to enforce payment of the note against Manasseh and Waldron after February, 1931, was in the nature of a temporary indulgence, and the rights of no one were altered thereby. Their attitude was one of passive waiting.

"The mere fact that the holder of a note has failed to sue on it will not justify the inference that he consented to extend the time of payment, in the face of positive testimony to the contrary." Mutual Nat'l Bank v. Coco, 107 La. 268, 31 So. 628.

■ It is not customary to extend time in which to pay obligations without consideration therefor, such as payment of interest, or a part of the principal, and the burden rests on the person claiming that such was done to establish the fact by convincing evidence. This has not been done in the present case.

■ Manasseh's contention that he has been prejudiced by the action of Mrs. Mills and her agent in not notifying him of Waldron's nonpayment of the note at maturity, is not well founded. The evidence does not show the extent the property has depreciated in value since February, 1931. It does show that its value depreciated about one-third since September, 1930. He does not testify that, had he been kept advised about Waldron's default in meeting payments on the note, he could and would have paid off the indebtedness, though he makes such averments in his answer. He admits, however, that he was in default himself on the payments and about to lose the property, when he sold to Waldron.

The judgment appealed from is wrong. For the reasons herein assigned, the judgment of the lower court rejecting plaintiff's demands against Oscar G. Manasseh is annulled, avoided, and reversed, and there is now judgment in favor of plaintiff and against said Oscar G. Manasseh condemning him with defendant J. S. Waldron, in solido, to pay plaintiff the amount sued for herein, principal, interest, attorney's fee, and costs, with recognition of mortgage rights as decreed by the lower court.

As amended hereby, the judgment appealed from is affirmed.