343 So.2d 284 (1977)
CAPITAL BANK & TRUST COMPANY
v.
G. Emitte CORE et al.
No. 11093.
Court of Appeal of Louisiana, First Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.
Writ Refused May 11, 1977.
*285 Michael A. Patterson, Baton Rouge, of counsel for plaintiff-appellant, Capital Bank and Trust Co.
Donald S. Zuber, Baton Rouge, of counsel for defendant-appellant, St. Paul Fire and Marine Insurance Co.
Anthony J. Clesi, Jr., Baton Rouge, of counsel for defendant-appellee, G. Emitte Core, Donald Mills and Jack Roberts, Jr.
George Clauer, III, Baton Rouge, of counsel for defendant-appellee, Big River Equipment Co., Inc. and Howard Carber.
Lawrence R. Anderson, Jr., Baton Rouge, of counsel for defendant-appellee, Donald J. Mills and Jack Roberts, Jr.
Before LANDRY, COLE and CLAIBORNE, JJ.
LANDRY, Judge.
Capital Bank & Trust Company (Capital), appeals from judgment dismissing its legal malpractice claims against G. Emitte Core, Donald J. Mills and Jack Roberts, Jr., Attorneys-at-Law, individually; the partnership of Core, Mills and Roberts, Attorneysat-Law, and St. Paul Fire & Marine Insurance Company (St. Paul), malpractice insurers of said attorneys, on exceptions of prematurity. St. Paul has also appealed requesting that this court pass upon its plea of exclusion of coverage based on alleged fraud, which issue was not determined by the trial court. We amend the judgment to decree St. Paul's lack of coverage.
For a cause of action Capital alleges it is holder of a collateral mortgage note given by Big River Equipment Company, Inc. (Big River), executed by said corporation's President, Harold Carber, to secure a $6,000 loan from Capital to Big River. Big River also executed a hand note, endorsed by Carber, *286 which instrument is also held by Capital. Core is the Notary Public before whom the collateral note and mortgage were executed. Core also issued Capital a title opinion covering the property described in the collateral mortgage, knowing that Capital would rely thereon in making the loan to Big River and also knowing the loan would not be made unless Big River owned the mortgaged property in full ownership and free of all encumbrances except the collateral mortgage to Capital. After granting several extensions on the hand note, Capital attempted to foreclose its collateral mortgage by executory process. The foreclosure proceeding was dismissed when Capital was unable to produce a resolution authorizing Carber to execute the collateral mortgage and note, notwithstanding Core's title opinion reciting that such a resolution was a matter of public record. Core's title opinion certified his examination of title to a stated date and hour, as of which time Core found the mortgaged property was owned by Big River free of all encumbrances save the collateral mortgage to Capital. Notwithstanding Core's title opinion, the mortgaged property was burdened with the following defects and encumbrances; (1) Big River's corporate existence was not a matter of public record; (2) Big River owned only a one-half interest in the property; (3) a previously recorded and uncancelled future holders' mortgage in the sum of $10,000; (4) a previously recorded and uncancelled future holders' mortgage in the sum of $16,000; and, (5) there was no recorded resolution authorizing Carber to execute the mortgage and note on behalf of Big River.
Capital's petition prays for judgment decreeing: (1) that defendants make valid and merchantable the title to the mortgaged property so that Capital be placed in the position of first mortgage holder, and as such, entitled to enforcement of its mortgage by executory process; and (2) alternatively, that capital have judgment against defendants in the sum of $6,000 plus 10% as attorney's fees as provided for in the collateral mortgage and note.
All defendants filed exceptions of no right and no cause of action which are, in reality, exceptions of prematurity. All said exceptions are based on Capital's failure to allege that an action has been brought against Big River, or Carber as endorser of the note, to collect the debt; or that Carber has refused to pay; or that the note is uncollectible from Big River. St. Paul asserted a policy exclusion which eliminates coverage for any dishonest, fraudulent, criminal or malicious act of its insured. Defendants also filed exceptions of lack of joinder of indispensable parties based on Capital's failure to join Big River and Carber. An amended petition by Capital joined both Carber and Big River herein.
The trial court considered the exceptions of no cause of actions as exceptions of prematurity and received evidence concerning this issue, as well as St. Paul's coverage question and the liability of Big River and Carber on the note. Judgment was rendered below in favor of Capital against Big River and Carber in the sum of $6,000 with interest and attorney's fees as provided in the note. Judgment was also rendered sustaining the exceptions of prematurity and dismissing Capital's action against defendant attorneys and St. Paul. The judgment was silent as to St. Paul's coverage issue. Capital's appeal reurges the same demands rejected by the trial court. St. Paul's appeal requests that we pass upon its coverage question and find a lack of coverage herein because of fraud. Defendant attorneys contend on appeal that no fraud has been shown herein, consequently there should be judgment on appeal, decreeing that St. Paul's policy covers the incident in question.
A full hearing was held below on the issue of prematurity and alleged fraud. The facts are undisputed, only the legal conclusions to be drawn therefrom are in contention.
Core was a member of defendant law partnership. Carber is Core's uncle-in-law, being married to Core's maternal aunt. Carber, whose relationship to Capital is not entirely clear, desired a loan of $6,000 for *287 Big River, which corporation Carber controlled. Core, who had done considerable business with Capital, introduced Carber to Capital's management and assisted Carber in arranging the desired loan. As a favor to Carber, Core offered to prepare, without charge, the collateral mortgage and note required by Capital as security for the proposed loan. Core was fully aware that Capital insisted upon a first mortgage on the property offered by Carber as security, and that said collateral mortgage constitute the only encumbrance against the property involved.
Core readily admitted his awareness of Capital's requirements and his knowledge of the existence of the above enumerated encumbrances against the property, except that he did not know Big River owned only a half interest in the property, and neither did he know there was no recorded resolution authorizing Carber to execute the mortgage and note on behalf of Big River. His explanation: the uncancelled $10,000 mortgage was either paid in full or reduced to $3,000; the uncancelled $16,000 mortgage was a sham to shield the property from the claims of Carber's creditors; the judgment against Carber had been paid in full but not cancelled; and, he believed a resolution had been recorded authorizing Carber to act on behalf of Big River in signing the collateral mortgage. Core conceded he did not examine the title to the property as certified in his title opinion. In essence Core testified he issued the title certificate, believing the property was owned by Big River and valued at approximately $40,000. He also believed Big River's equity in the property was more than sufficient security for the loan to be advanced by Capital. Core concedes his negligence, but denies any attempt or design to defraud or derive any personal benefit from his action.
Willie Annison, a Capital vice president, made the loan in question. He testified he made it clear to Core and Carber that the bank required a first mortgage as collateral, and that the property pledged be free of all other encumbrances. He also required that Core furnish a title certificate attesting the good and merchantable title to the property offered as security. Annison stated that Capital's suit to foreclose by executory process had been dismissed because there was no recorded resolution authorizing Carber to execute the note and mortgage on behalf of Big River, contrary to Core's certification in the title opinion. Annison conceded that no further effort was made to collect from Carber individually, as endorser, or to proceed against Big River by ordinary process.
We first consider whether Capital has the right to a direct action against Core and St. Paul. Capital concedes it did not directly engage Core as its attorney in this instance, and that it did not pay Core any remuneration for the title opinion. Capital also concedes there is no case in point in our own jurisprudence. In support of its position, Capital cites the following authorities from other jurisdictions which have held that a lender, who advances funds on the strength of a title opinion rendered to it by an attorney whom the lender did not directly retain, has the right to a direct action against the attorney, either in contract or as third party beneficiary: Brown v. Sims, 22 Ind.App. 317, 53 N.E. 779 (1899); Economy Building & Loan Assoc. v. West Jersey Title & Guarantee Co., 64 N.J.L. 27, 44 A. 854 (1899); Western Loan & Savings Co. v. Silber Bow Abstract Co., 31 Mont. 448, 78 P. 774 (1904); Anderson v. Spriestersbach, 69 Wash. 393, 125 P. 166 (1912); Scott v. Jordan, 55 Okl. 708, 155 P. 498 (1916); Shine v. Nash Abstract & Investment Co., 217 Ala. 498, 117 So. 47 (1928); Lawyers Title Insurance Corp. v. Pitre, 245 F.2d 334 (5th Cir. 1957); Slate v. Boone County Abstract Co., 432 S.W.2d 305 (Mo. 1968); Williams v. Polgar, 391 Mich. 6, 215 N.W.2d 149 (1974).
The cited authorities deal with the liability of an abstractor to a third party who relies upon an abstract of title, not to a third party relying upon an attorney's title opinion. We believe, however, the rationale of these cases is applicable in the instant case. In Williams v. Polgar, above, the Supreme Court of Michigan held that privity *288 of contract was no longer required in Michigan for a third party to recover, from an abstractor, damages sustained because of a faulty abstract furnished with knowledge that the third party would rely thereon. In a most scholarly opinion, the Michigan court reviewed all authorities dealing with the question, and found the trend of the decisions is to extend liability in such instances. The court noted that various jurisdictions have extended the abstractor's liability in such cases based on various theories including, among others, the third party beneficiary concept, the foreseeability of use rule, and cases involving fraud or collusion. In effect, the authorities tend to hold, on one concept or another, that an actual contract exists or at least there is privity of contract in these instances. See Western Loan & Savings, above. We find the reasoning of these authorities to be sound. We also find the principles involved bring about just results, and we endorse them as our own. Additionally, we equate a situation of this nature to our own codal provision which establishes liability for a stipulation pour autrui pursuant to which one may bind himself for the benefit of a third party. In such cases, privity of contract results and the agreement becomes binding and effective in favor of the third party upon his acceptance. LSA-C.C. Article 1890; People's Bank of Mobile, Ala. v. Shreveport Ice & Brewing Co., 142 La. 802, 77 So. 636. In this instance, Capital accepted the benefit when it made the loan in reliance upon Core's title opinion.
We reject, however, Capital's claim for specific performance by Core in the form of either making good the title warranted or paying the borrower's debt. Core's opinion does not purport to personally guarantee payment of the loan. Core merely warranted good and merchantable title to the mortgaged property, and also warranted Capital's position as first mortgagee of otherwise encumbered collateral. Specific performance in the form of Core furnishing good and merchantable title is impossible, because Core is not in position to demand the right to acquire the outstanding half interest in the mortgaged property.
In a malpractice action against an attorney, the client is entitled to such damages as result from the error, negligence, or dereliction involved. Marchand v. Miazza, La.App., 151 So.2d 372; Watkins v. Sheppard, La.App., 278 So.2d 890; Perkins v. Brown, La.App., 236 So.2d 579. In this instance, Capital has alleged and proven legal malpractice, but has not shown any monetary loss or other damages measurable in monetary terms. Until such damages are ascertainable, its action is premature.
Considering the procedural posture of this case, we are inclined to examine St. Paul's claimed exclusion of coverage. This issue was fully tried below and, if determined in St. Paul's favor, would remove said defendant from involvement in any future litigation which may result from this incident. We therefore consider this issue in the interest of justice and the speedy determination of legal proceedings.
St. Paul's policy pertinently provides:
"COVERAGE A (PROFESSIONAL LIABILITY COVERAGE) DOES NOT APPLY: (1) to any dishonest, frauddulent, criminal or malicious act or omission of the insured, any partner or employee; _ _ _."
Defendant attorneys contend no fraud was committed in this instance. They concede Core's negligence, but argue his absence of intent to cause harm, injury or loss, or to gain any advantage to himself, cleanses his action of the stigma of fraud. In support of this position they cite and rely upon LSA-C.C. Article 1847; Strauss v. Insurance Company of North America, 157 La. 661, 102 So. 861 (1925); Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953); and other authorities.
Fraud, in contractual matters, is defined by LSA-C.C. Article 1847, as follows:
"Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to *289 cause an inconvenience or loss to the other." (Emphasis supplied by the court.)
In Webster's Third New International Dictionary, Unabridged, 1963 Edition, "Fraud" is defined as follows:
"2. Characterized by lack of truth, honesty, probity, or untrustworthiness or by an inclination to mislead, lie, cheat or defraud."
Under our own definition of fraud as set forth in Article 1847, above, specific intent to harm or cause loss is not an indispensable element. LSA-C.C. Article 1847, above is couched in the disjunctive. Fraud may result from the intent to cause harm or loss or to cause an inconvenience to another.
Fraud is never presumed but must be established by clear and convincing evidence. Buxton v. McKendrick, above.
We find all the essential elements of fraud present in this instance. It is clear from the record that Core knew the salient representations concerning marketability of Big River's title were false and untrue. Yet, with full knowledge of such falsity, he consciously and deliberately certified the truth and accuracy of his opinion. He also intentionally misrepresented the crucial statement that he had personally examined the records, and that his opinion was based on such examination. It is conceded that Core knew Capital would rely upon his opinion and advance a considerable sum of money on the strength of its accuracy, as security for which Capital expected to receive a first mortgage, capable of execution by executory process, on property otherwise unencumbered. The record also shows that Capital has sustained a gross inconvenience, namely, inability to foreclose its mortgage by executory process.
It is ordered, adjudged and decreed that the judgment of the trial court be amended, in that judgment is rendered herein in favor of St. Paul, and against Capital, Emitte Core, Donald J. Mills and Jack Roberts, Jr., individually, and the partnership of Core, Mills and Roberts, Attorneysat-Law, declaring that St. Paul's coverage of said attorneys and legal partnership involved herein, does not apply with respect to any further action Capital may institute against said attorneys and legal partnership predicated on the incident involved in this litigation.
In all other respects the judgment of the trial court is affirmed, all costs of these proceedings to be paid by defendants Big River, Harold Carber, Emitte Core, Donald J. Mills, Jack Roberts, Jr., and the partnership of Core, Mills and Roberts, Attorneysat-Law, in solido.
Amended and affirmed.