581 So.2d 719 (1991)
CITIZENS NATIONAL BANK
v.
GILSBAR, INC.
No. CA 90 0226.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
T. Jay Seale, III, Hammond, for plaintiff-appellant.
John C. Miller, Baton Rouge, for defendant-appellee.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
This litigation involves a claim by plaintiff, Citizens National Bank (CNB), against defendant, New England Insurance Company, which allegedly maintains a policy of Lawyers Professional Liability Insurance insuring a particular unnamed insured for errors and omissions.[1]
On July 14, 1982, CNB made a loan to Circle Seven Farms, Inc., Alphonso Gomes and Juliane Elsner Gomes in the amount of $450,685.39, in return for which Circle Seven Farms, Inc. and the Gomeses executed a promissory note payable to CNB in that amount. The promissory note was secured by a collateral mortgage and a collateral mortgage note executed by the Gomeses on June 19, 1981, in the amount of $300,000.00. *720 This mortgage covered two tracts of land, an 80 acre tract and a 2.88 acre tract, both of which are located in Tangipahoa Parish.
The July 14, 1982, promissory note was further secured by a collateral mortgage and collateral mortgage note dated January 15, 1982, executed by the Gomeses and Circle Seven Farms, Inc. in the amount of $200,000.00. This mortgage covered the 2.88 acre tract mentioned above.
As a condition of the loan, CNB required a title examination opinion to be issued by defendant's insured certifying that the title to the property described above was good, valid and merchantable. Pursuant to this requirement, defendant's insured issued a title examination opinion letter dated September 11, 1981, to CNB. This title opinion certified that the Gomeses possessed a good, valid and merchantable title to the eighty acre and 2.88 acre tracts of land subject to the June 19, 1981 mortgage. Relying on this title opinion, CNB accepted the security set forth in the mortgages as collateral for the July, 1982 loan.
Subsequently, the Gomeses filed a petition for release under federal bankruptcy laws. Sometime between July 19, 1983, and September 30, 1983, CNB discovered through an abstract and survey that the Gomeses did not own the 2.88 acre tract in its entirety; the Gomeses had alienated 1.345 acres of the 2.88 acre tract prior to the execution of the collateral mortgages affecting this tract of land. At the same time that CNB discovered the problems with the 2.88 tract, it also learned of problems with the 80 acre tract of land. The abstract and survey revealed that a prior mortgage had been executed in favor of a third party in the amount of $65,000.00 and that the Gomeses had sold 1.36 acres of this tract and granted certain rights of way affecting this tract prior to execution of the collateral mortgage in favor of CNB.
CNB commenced foreclosure proceedings with respect to the 2.88 acre tract, this tract being seized on October 7, 1983. CNB subsequently purchased that part of the 2.88 acre tract that the Gomeses actually owned (approximately 1.535 acres) at sheriff's sale on November 30, 1983. CNB sold the 1.535 acres to a third party on December 15, 1983.
CNB did not institute foreclosure proceedings with respect to the 80 acre tract. The Gomeses transferred the 78.64 acres they actually owned to CNB pursuant to a dation en paiement dated April 24, 1984. CNB transferred this property to a third party pursuant to an act of exchange executed on August 24, 1987.
CNB filed suit in this matter on January 26, 1988, and filed an amending petition on March 11, 1988, which named New England Insurance Company as a defendant. CNB alleged that although it had sold the Gomes property which had been recovered pursuant to the foreclosure proceedings and the dation en paiement, CNB was not able to recover the entire amount owed by the Gomeses. CNB further alleged that the Gomeses are insolvent and that it has no further recourse to recover the remainder of the debt owed by the Gomeses. CNB alleged that as a consequence of the negligent acts and omissions of the defendant's insured, CNB has suffered a loss in the amount of $60,000.00.
Defendant filed a peremptory exception raising the objection of prescription which was sustained by the trial court. Judgment was rendered dismissing plaintiff's suit from which plaintiff has appealed.
The parties do not dispute that the applicable prescriptive period in this action is one year based on La.C.C. art. 3492 which provides, "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." However, the parties disagree as to when damage was sustained in the present case. Defendant contends that damage was sustained by plaintiff no later than September 30, 1983, when it obtained the survey which disclosed that the Gomeses owned less property than was described in the mortgages. On the other hand, plaintiff argues that it did not sustain damages until August 24, 1987, when it sold the 78.64 acres that the Gomeses had transferred to plaintiff; CNB contends that it did not know *721 until this time that sale of the previously mortgaged property would not generate enough funds to cover the Gomeses' debt.
The Louisiana Supreme Court has previously dealt with the issue of prescription in a legal malpractice action in Rayne State Bank & Trust v. National U.Fire Ins., 483 So.2d 987 (La.1986). In Rayne, the plaintiff bank made loans to two construction companies which were secured by mortgages affecting chattels. The two mortgages drafted by defendant attorney failed to state the location of the chattels involved, as was then required by the Louisiana Chattel Mortgage Act, "a defect which might have under some circumstances rendered the mortgages invalid as to the chattels." 483 So.2d at 988. Shortly after the bank made the loans, the debtors defaulted. In March of 1980, the bank was made aware of the possibly fatal defects in the mortgages. In January of 1981, the bank instituted foreclosure proceedings by executory process against the debtors. The debtors then filed bankruptcy proceedings. On January 27, 1981, in their capacity as court appointed debtors in possession with the avoidance powers of trustees, the debtors filed adversary proceedings against the bank to have the mortgages declared invalid. On April 28, 1981, the bank filed a third-party demand in bankruptcy court against the defendant attorney who prepared the mortgages. After settling with the debtors on October 2, 1981, the bank filed the malpractice suit in state court against defendant attorney in March of 1982. The defendant argued that prescription began to run in March of 1980 when the bank was informed of the defects in the mortgages. The Supreme Court rejected this argument, finding that prescription commenced when the bank sustained damages because of the defect in the mortgage, not when it merely acquired knowledge of the legal deficiencies. The court reasoned as follows:
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of actionboth a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. 483 So.2d at 995.
The Court determined that although the full extent of the bank's damage was not known, it had in fact sustained some damage when the mortgages were judicially attacked on January 27, 1981. The Court reasoned that this attack, which the bank was forced to defend, was direct damage to the bank resulting from the existence of the defects in the mortgages. Thus, the Court determined that the prescriptive period on the legal malpractice action against defendant attorney began to run on January 27, 1981, and was interrupted when plaintiff bank filed the third-party demand against defendant attorney in bankruptcy court on April 28, 1981. Thus, the suit was not prescribed.
Plaintiff relies strongly on the case of Capital Bank & Trust Co. v. Core, 343 So.2d 284 (La.App. 1st Cir.), writ denied, 345 So.2d 504 (La.1977). In this case, Capital brought an action against an attorney, G. Emitte Core, his law partnership and a malpractice insurer, claiming that Core was guilty of legal malpractice in the manner in which he prepared a title opinion covering the property mortgaged to the lender. Capital was the holder of a collateral mortgage note given by Big River Equipment Company, Inc., executed by Big River's president, Harold Carber, to secure a loan from Capital to Big River. Capital also held a hand note executed by Big River and endorsed by Carber. Core issued Capital a title opinion covering the property described in the collateral mortgage in which Core certified that the mortgaged property was owned by Big River free of all encumbrances except for the collateral mortgage to Capital. Core also stated in the title opinion that a corporate resolution authorizing Carber to execute the collateral mortgage and note was a matter of public record. After Big River defaulted on the hand note, Capital attempted to foreclose its collateral mortgage by executory process. The foreclosure proceeding was dismissed *722 when Capital was unable to produce a resolution authorizing Carber to execute the collateral mortgage and note. Notwithstanding Core's title opinion, the mortgaged property was burdened with a number of defects and encumbrances such as Big River owned only a one-half interest in the property and there was no recorded resolution authorizing Carber to execute the mortgage and note on behalf of Big River.
The defendant attorney, partnership and insurer filed exceptions of no right and no cause of action based on Capital's failure to allege that an action had been brought against Big River, or Carber as endorser of the note, to collect the debt; or that Carber had refused to pay; or that the note was uncollectible from Big River. In an amended petition, Capital named both Carber and Big River as additional defendants.
The trial court considered the exceptions of no cause of actions as exceptions of prematurity and sustained them. Judgment was also rendered in favor of Capital and against Big River and Carber for the loan amount plus interest and attorney's fees.
Capital appealed the trial court's judgment dismissing its legal malpractice claims against the defendant attorney, partnership and insurer. This court affirmed that part of the trial court's judgment stating, "Capital has alleged and proven legal malpractice, but has not shown any monetary loss or other damages measurable in monetary terms. Until such damages are ascertainable, its action is premature." 343 So.2d at 288.
Plaintiff argues that the Capital Bank case requires it to exhaust all alternative remedies to collect upon the debt before its action for malpractice comes into existence and prescription begins to toll. Thus, plaintiff contends it did not exhaust all of its available remedies to collect the Gomeses' debt until it sold the 78.64 acres on August 24, 1987, and accordingly, prescription did not begin to run until this date.
We do not accept plaintiff's argument regarding the Capital Bank case because we find that the reasoning of Capital Bank regarding the prematurity of the bank's action is invalidated by the Supreme Court's reasoning in Rayne. In Rayne, the Court determined that the bank incurred damage when it was forced to defend a third-party attack claiming invalidity of the mortgages. The Court stated that although the full extent of the damage was not yet known at that time, the fact that some damage would occur was known, since the bank had to defend against the attack.
Applying this rationale to the facts of the Capital Bank case, we find that the bank had in fact sustained some damage when it incurred court costs and attorneys' fees as a result of its unsuccessful efforts to foreclose its collateral mortgage by executory process. Pursuant to the rationale of Rayne, since the bank had sustained some damage at the time it filed suit, the action against the defendant attorney, partnership and insurer should not have been determined to be premature.
Applying the Rayne reasoning to the present case, we find that CNB had knowledge that the Gomeses owned less property than that which was described in the mortgages as of September 30, 1983, and was damaged by the defective title opinion no later than November 30, 1983. CNB was damaged at this time since it was unable to have the entire 2.88 acre tract described in the mortgage sold at Sheriff's sale on this date. CNB seized the 2.88 acre tract of land on October 7, 1983. However, the sheriff's sale, which took place on November 30, 1983, only affected the 1.535 acres actually owned by the Gomeses. Although CNB did not know the full extent of its damages until a much later date (presumably on August 24, 1987, when CNB sold the 78.64 acres that the Gomeses had transferred to it), we find prescription began to run on November 30, 1983 when CNB first sustained damage. Thus, the suit against defendant, which was filed in 1988, is clearly prescribed.
For these reasons, the judgment of the trial court sustaining defendant's exception raising the objection of prescription is affirmed. *723 All costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.
NOTES
[1] Gilsbar, Inc. was originally named as a defendant but was later dismissed from the suit.