HARDY, Judge.
This is a suit by the Bank of Montgomery of Montgomery, Louisiana, on a promissory note dated January 6, 1947, payable December 20, 1947, in the principal sum of $432.00, providing for 8% per annum interest from maturity until paid, and 10% attorney’s fees. Defendants are Bryant Reeves, a resident of Grant Parish, Louisiana, the maker of the note, and Joseph H. Jackson, a resident of Shreveport, Caddo Parish, Louisiana, endorser of said note. Judgment against the maker, Reeves, was rendered by default, no defense having been made. The defendant, Jackson, filed answer, in propria persona, and after trial there was judgment in favor of plaintiff and against defendants, in solido, as prayed, from which judgment the defendant, Jackson, has appealed.
The defenses relied upon by appellant are specifically set forth in his brief, as follows:
“1. He bound himself to the knowledge of all parties concerned as surety only;
“2. No notice was given the surety of the maturity of the note nor was demand made upon him for payment and that over his expressed objections the payment of the note was extended by the holder from time to time.
“3. That after being repeatedly advised by the surety of the intention of the maker not to pay and after having requested the Payee to enforce payment by suit or otherwise, the Payee continued to grant extensions and although the maker some several months after maturity and after several extensions offered to permit the payee to take judgment against him and offered to surrender a truck well worth more than the amount of the note with accumulated interest and although the payee was urged by the endorser to accept a surrender of the truck thus offered, the payee took no action upon the offer or any other action toward a collection of the note until the institution of this note some ten months later and that by the extensions thus granted to the maker, over the protest of the surety, and the refusal of the payee to effect a settlement and liquidation of the indebtedness offered by the maker and urged by the surety, the latter was thereby released.”
And by way of simplifying the burden of his defense appellant makes the following observation; “It appears from the foregoing that the question here is not whether or not the payee of a note has the right to grant an indulgence or make an extension to the maker without the notice to the surety, but whether or not the payee of a note has the right under the laws of Louisiana and over the protest and objection of the surety to convert his *216 secondary obligation into a primary obligation and, in effect, release the maker and particularly when the payee knows that the surety never received any benefit whatever from the transaction.”
Proceeding to a consideration of the several points urged by appellant we are constrained to observe that the facts do not bear out his first contention. Appellant failed to establish the fact on trial of the case that he had bound himself, to the knowledge of all parties, only as surety. On the contrary the testimony is convincing that the note was signed by the maker and later presented by him to the defendant, Jackson, who endorsed same, subsequent to which it was delivered to the bank by the maker, the defendant Reeves. ■ -
So far as the record discloses there was no understanding or agreement as between Jackson and the bank with respect to any restriction of his liability and under the circumstances the note must be accepted as convincing evidence of the fact that Jackson was an endorser. However, in order to give full consideration to the very thorough presentation of his several defenses that have been made by appellant and set forth in an elaborate brief, we note that he relies upon specific articles of the Civil Code of Louisiana bearing upon the obligations of suretyship, which articles we quote in full:
“3035. Suretyship defined. — Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not.”
* * * * * * *
“3045. Liability of surety to creditor— Duty to first exhaust principal — Exceptions. — The obligation of the surety towards the creditor is to pay him in case the debtor should not himself satisfy the debt; and the property of such debtor is to be previously discussed or seized; unless the security should have renounced the plea of discussion, or should .be bound in solido jointly with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors in solido.”
* * * * * *
“3061. Discharge of surety by act of creditor. — The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety.”
“3062. Creditor accepting property in payment of debt — Discharge of surety.— The voluntary acceptance on the part of the creditor, of an immovable or any other property, in payment of the principal debt, is a full discharge of the surety, even in case the creditor should be afterwards evicted from the property so accepted.”
“3063. Extension of time without surety’s consent. — The prolongation of the terms granted to the principal debtor without the consent of the surety, operates a discharge of the latter.”
We find nothing in the quoted articles which in the instant case would bring appellant within the purview of their provisions and definitions.
With reference to the contention that no notice was given of the maturity of the note and that payment thereof was extended by the holder from time to time over appellant’s express objections, again we do not find that the facts justify the conclusion drawn. There was considerable correspondence among the parties with reference to the obligation and we set forth the body of ten letters in accordance with the identification and cronological listing set forth by appellant in brief:
1. Letter from Bryant Reeves to' J. H. Jackson dated December 8, 1947:
“I am unable to pay off note at bank but I am willing to do what I can. I will pay interest on it. If you will give me permission to carry it over.”
2. Letter from J. H. Jackson to Bryant Reeves dated December 15, 1947:
“I am in receipt of yours of December 8th in which you advise that you are unable to pay your note at the bank which I endorsed but can pay the interest, pro *217 vided I agree for the hank to extend the note and hold me as endorser.
“Since you are no longer on my place, you should secure the bank either by endorsement of your present lessor or in some other way. It isn’t proper for you to expect me to endorse for you to farm somebody else’s land. You could either secure the bank with a new endorser or ■by giving it a chattel mortgage on your car. I, therefore, suggest that you substitute a new note with a new endorser or chattel mortgage as above suggested.
“I am sending a copy of this to the bank.”
3.Letter from J. H. Jackson to Bank of Montgomery dated May 27, 1948:
“I have yours with reference to the past due note of Bryant Reeves which I endorsed for him when he was a tenant on my place. I am not surprised that he has not seen fit to make any satisfactory adjustment of the matter. In fact I would be surprised if he did so voluntarily. I am certain that he does not intend to pay this as long as he can entertain any hope that I will pay it.
“You will recall that shortly after the maturity of the note he contacted you for an extension and you referred him to me. I wrote him, in reply to his request for an extension, advising him that I would not agree to his suggestion that he pay the interest to you, provided I would agree for you to extend the note. I wrote the letter on December IS, 1947, and mailed you a copy of it.
“As stated in that letter, he was in a position at that time to pay the note by selling his truck or to secure the payment of it either with a chattel mortgage on his truck or by obtaining the endorsement of the owner of the place on which he was living. Since I sént you a copy of the letter and heard nothing from either you or him, I had naturally assumed that a new note had been arranged.
“Reeves showed no disposition to pay the note in any contact I had with him before he left my place and, at a time when he was declaring his intention of selling his truck, I offered to buy it and pay him a rather stiff price, provided his note held by you be liquidated. I did not see him personally, but my brother made this offer to him. He wasn’t interested and I don’t expect him to be interested in paying the note unless you convince him that he will either pay or you will reduce it to judgment and force execution.”
4. Letter from L. Dow Wardlow, President, Bank of Montgomery, to J. H. Jackson, dated June 14, 1948:
“I saw and talked with Mr. Reeves this morning and we agreed to wit on him un-tile the melon crop was sold as he said that he would tarn in payments as he sold but if he does not then we will have to ask that the note be paid off. We are doing our best to get the note paid by him.”
5. Letter from L. Dow Wardlow to J. H. Jackson dated July 24, 1948:
“I now enclose card from Mr. Bryant Reeves which we received this morning and looks like we are at our rows end for some thirty days ago I called him in the Bank and he told us that when he began selling melons he would start to paying on the note and not one word was said at the time about a truck, so he has not turned in a dime of melon money and this card is what we get. Just a few minutes ago Mr. L. O. Jones with whom he now lives came in the Bank and I took it upon myself to ask him if he would be interest in helping him and he said not until he did something himself. We have been taking promises for the past several months and looks like the time has come when we will have to collect. Please give this your prompt attention and oblige.”
6. Letter from J. H. Jackson to L. Dow Wardlow dated July 30, 1948:
“I received your letter of July 24th advising that Bryant Reeves has made no payment on the note which you hold and further advising that Mr. L. O. Jones, with whom he lives, states that he would not be interested in helping Reeves until he did something himself. I am not surprised that you have found this situation. I apprised you of what you might expect *218 when you, on the maturity of the note, offered to extend it only on condition Reeves pay the interest and I consent to it. You will recall I promptly notified you and Reeves that I would not consent to this. I knew at the time he could pay it or make you secure, but that he did not intend to do so. For that reason, I sent you a copy of the letter I wrote him so as to inform you of my position.
“I note from his card that he expresses a willingness to turn his truck over to you, subject to the payment of a chattel mortgage in the amount of $250.00. If the valuation he places on it is reasonable, you could effect a collection by calling on him to deliver the truck to you and putting it up for sale. I feel sure that if you apply no more pressure, however, during the next year than you have for the past eight of ten months in collecting this note, he will never pay it, and I certainly do not expect you merely to call on me to pay it when you could collect it from him.”
7.Letter from J. H. Jackson to Bank of Montgomery dated September 9, 1948:
“During my absence from the office on vacation, you wrote me relative to your position on the Bryant Reeves’ note and my partner, Mr. Mayer, advised you of the situation.
“Referring further to this matter, I agree with you that action should be taken to enforce collection of this note and, as I have previously advised, I thought that should have been done long ago. If you desire to couple me in the suit, I would be glad to accept service of the petition if you will instruct your attorney to forward it to me.
“While, as stated above and in other letters, I think the bank should have enforced collection long ago which action would have certainly relieved me of any obligation on this note, yet purely as a compromise matter I have decided that I will offer to purchase from you a half interest in the note, provided you will relieve me of any claims you may feel the 'bank has against me and will promptly proceed to the collection of the note for our joint benefit. I will be pleased to have your views of the matter.”
8. Letter from L. Dow Wardlow to J. H. Jackson dated October 11, 1948:
“Please pardon the delay as my health is such that I have been spending the time in Hospitals and Clinics and just back late Saturday evening of the 9th, from Myos Clinic and leaving last of this week for an operation. We have every effort in the world to collect from Mr. Reeves and since his last promise to pay from the sale of his melons we have been unable to get him to come to the Bank or as much as see him. Now unless you want to take up the note without more cost we will be obliged to turn it over to our Attorney for collection which we dislike very much to have to do.”
9. Letter from J. H. Jackson to L. J. Wardlow dated October 15, 1948:
“I am in receipt of your letter of October 11th which reached me yesterday in which you advise that, unless I want to take up Bryant Reeves’ note, you will be oblig'ed to turn it over to your attorney for collection. I assume that you decline to accept the offer in compromise made you sometime ago and it is, accordingly, withdrawn. The only criticism that I have to make of your placing this matter in the hands of an attorney is the one I have reputedly expressed in substance in the last year, and that is you have been too tardy in doing so. You, of course, understand that I deny liability on this note.
“I am very sorry to learn of your recent prolonged visits to hospitals and clinics. I understood that for a time you were in Shreveport but, when I inquired about you here you had left. I trust that you will soon be back at home enjoying your usual good health.”
10. Letter from J. H. Jackson to Arthur C. Watson, attorney for plaintiff, dated November 5, 1948:
“I have your letter advising that the Bank of Montgomery has turned over to you a note of Bryant Reeves endorsed by me and requesting that I advise you my reason for denying liability on this note.
“About the time of the maturity of the note, the maker was- able to pay it, and,. *219 through another, I offered to purchase a truck from him provided he would pay this note. He declined to do this although he had stated he had intended to sell the truck. Shortly, thereafter he approached the bank for an extension and the bank refused to give him the extension unless I consented. On being advised of this by him, I promptly notified the bank that I would not consent to the extension and suggested that he secure the bank in some other way. Several months thereafter, the bank advised me that the maker had requested an extension until after he marketed his watermelon crop which would soon come into production and that the bank had consented to do so on his promise to retire the note out of his watermelon crop.
“Some considerable time after that the bank advised me that Reeves had disregarded his promise, had marketed his crop and, if the bank desired, they could take judgment and execute on his truck. I advised them that they should have done that long ago but should certainly get him to surrender the truck to them at the time, but they took no action.
“I am reasonably sure that the maker is judgment-proof at this time. I think, however, the attitude of the bank is without justification. I certainly do not believe they have the right to convert my secondary liability into a primary liability as they are seeking to do here. I think this case is controlled by the reasoning in Isaacs v. Van Hoose, 171 La. 676, 131 So. 345.”
Careful consideration of the correspondence above set forth does not indicate to our minds that the Bank ever made any extension of the time for payment and this conclusion is further substantiated by the fact that the note shows no evidence of any such extension. It is quite true that the Bank was most lenient with the maker of the note and it is worthy of comment that this financial institution apparently made every reasonable effort to give the maker opportunity to pay off the note before pressing for judgment. Certainly it cannot be said that this action evidenced any lack of consideration for the rights and interest of the appellant. We think detailed discussion of the question of the extension of time for payment is entirely unnecessary in view of the provisions of the note itself, as follows : “The makers, endorsers, guarantors and sureties of this note hereby severally waive presentment for payment, demand, notice of nonpayment, protest and notice of protest, and all pleas of division and discussion; and consent that the time of payment may he extended without notice.” (Emphasis by the Court.)
We are thoroughly convinced that the above quoted obligation embodied in the note is controlling and is binding upon all the parties thereto. For this reason it matters not in the final analysis whether appellant is considered as an endorser or as a surety with respect to this point. A similar provision in a note was construed and enforced in Merchants & Farmers Bank & Trust Co. v. Johnson et al., La.App., 142 So. 158, on the authority of other cases therein cited.
Appellant interposes another point in this particular, based upon the fact that he endorsed the note at a time when he was under severe mental and emotional strain by reason of the last illness of his sister and that he did not read the provisions of the note. As much as we may sympathize with appellant by reason of the unfortunate circumstance, we think the point is completely untenable and feel sure that so brilliant and experienced an attorney as appellant does not seriously rely ■upon such a contention.
With reference to the last asserted defense as above set forth, the facts developed on trial show that Reeves, the maker of the note, by postcard communication addressed to Mr. L. Dow Wardlow, undated but postmarked at Montgomery, Louisiana, on July 23, 1948, made the following suggestion:
“Dear Mr. Wardlow you asked me to let you know when I could start payment on the note at Bank. I have just tould you about 3 weeks ago just as soon as I sell my truck but If you can’t wait go *220 ahead and collect it by law. There is $250.00 mortgage on truck it is well worth $800.00. You pay that off and take truck if you want to that is all I can do.
“Bryant Reeves”
There is nothing in the record which indicates the true value of Reeves’ truck at the time of making the offer. Regardless of this fact, however, we know of no rule of law, of custom, nor indeed of reason which would require a bank to accept an offer of this nature. Customarily a bank expects the payment of obligations in cash, to which it is entitled. A bank is not in the used car business, and to insist that a creditor has been guilty of a failure to discharge his obligations because he did not buy off a debtor’s mortgage on movable property, take possession of same, have it sold and discharge the debt, is unreasonable.
Further with reference to this point appellant mistakenly declares in brief that in this case the bank was offered a truck in pledge, which it refused to accept, and relies upon same. There is nothing indicating Reeves’ intention to pledge his truck.
It appears that appellant complains of the conduct of the bank, to a degree, on the ground that the bank knew that he, appellant, was responsible and answerable for the obligation. Certainly appellant should not take offense in this particular, and we point out that unquestionably it was by reason of his responsibility that the money was advanced by the bank in the first instance to the tenant farmer on his property. The unfortunate results of this transaction are not unusual and it is likely that almost everyone who has had experience with farm property and tenants has been the victim of similar misfortunes.
We think it unnecessary to dwell upon an interpretation of the numerous authorities cited by the appellant in view of the fact that they deal with matters extraneous to the points here involved, and, in our opinion, are inapposite under the facts of the instant case.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.