(113 So. 367)

No. 27492.

## RHYS v. MOODY.

May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. Mortgages ⬅280(4)—Purchaser held not released from obligation on mortgage notes for property by subsequent purchaser assuming their payment, nor estopped from questioning ownership and payment of notes.

Where purchaser of property executed mortgage notes to seller in payment thereof, resale of property to another who assumed payment of notes did not release first purchaser from obligation to owner and holder of his notes, nor estop him in foreclosure proceeding from raising question whether plaintiff was owner of his notes and whether they had been paid by second purchaser.

2. Mortgages ⬅298(4)—Mortgage ceases to exist on payment of notes, secured, and second mortgage becomes first mortgage.

If notes executed by purchaser in payment of realty were paid, mortgage securing notes ceased to exist, and notes and mortgage executed by subsequent purchaser became first in rank on property.

3. Mortgages ⬅319(2), 413—First mortgagor holding subsequent purchaser's notes and mortgage may prove extinguishment of first mortgage and enjoin foreclosure on paid notes.

Purchaser executing notes and mortgage for property and subsequently reselling property to another, taking notes secured by mortgage, has right to allege and prove in foreclosure proceeding extinguishment of first notes and mortgage so as to establish second notes and mortgage as superior debt against property, and may enjoin seizure and sale on alleged paid notes.

4. Mortgages ⬅270—Purchaser assuming first mortgage notes held shown to have purchased notes in good faith in daughter's name as outstanding obligation against property to extent of daughter's money.

In foreclosure proceedings against defendant executing notes secured by first mortgage, evidence *held* to show that purchaser from defendant executing notes secured by second mortgage and assuming payment of defendant's notes made bona fide purchase with daughter's money and in name of daughter of first mortgage notes, so as to convey title in notes to daughter as outstanding obligation against land to extent of money furnished by daughter, and that such transaction did not operate as payment of notes.

5. Mortgages ⬅298(3)—First mortgage notes, purchased by vendee who had their payment, with own and daughter's money, held paid to extent of purchaser's money used.

Where purchaser of realty from defendant executed notes secured by second mortgage and assumed payment of first mortgage notes made by defendant, subsequent purchase by him of first mortgage notes in name of daughter, with his own and daughter's money, operated as payment of such notes to extent of money belonging to purchaser.

6. Mortgages ⬅417—Title of purchaser to first mortgage notes held unaffected by permitting bank to attach notes as collateral to note of second purchaser for loan.

In foreclosure proceeding by purchaser of first mortgage notes prior to maturity of second mortgage notes, plaintiff's title was not affected by permitting bank to attach first mortgage notes as collateral to note executed by second purchaser of property.

7. Limitation of actions ⬅155(3), 157(3)—Prescription; neither maker of first mortgage notes nor purchaser of realty becoming bound in solido by assuming notes could plead five-year prescriptive period against notes where purchaser continued interest payments.

Purchaser of property assuming payment and indorsing first mortgage notes became bound for payment of notes in solido with maker and was prevented from pleading five-year prescriptive period to suit on notes, both as to

himself and co-obligor in solido, by consenting to use notes as collateral to his own and by paying interest on notes.

**8. Limitation of actions ⬦⟳143(2)—Prescription as to all solidary obligors is interrupted by acknowledgment of one obligor.**

Acknowledgment of one solidary obligor interrupts prescription as to others.

Appeal from Twentieth Judicial District Court, Parish of East Feliciana; Charles Kilbourne, Judge.

Foreclosure proceeding by Marian Rhys against B. L. Moody, in which defendant sought injunction against plaintiff. From a judgment perpetuating the injunction in part, defendant appeals, and plaintiff answers the appeal, praying for affirmative relief. Affirmed.

George J. Woodside, of Clinton, for appellant.

H. H. Kilbourne, of Clinton, for appellee.

THOMPSON, J. The plaintiff obtained an order of seizure and sale on three notes of $1,000 each, dated November 2, 1917, and payable 1, 2, and 3 years after date, respectively. The notes were issued by the defendant, Moody, were made payable to his own order, and by him indorsed in blank.

The notes represented a part of the price of certain lands purchased by Moody from P. E. Richardson.

On February 21, 1919, Moody sold the land to Arthur Rhys, the father of the plaintiff. As a part of the consideration of this sale Rhys assumed the payment of the three Richardson notes, and for the balance executed his own notes in favor of Moody, one for $500, payable November 2, 1919, and three for $1,000 each, payable on November 2, 1920, 1921, and 1922, respectively.

All were secured by vendor's privilege and special mortgage on the land conveyed.

Both acts of sale, the one from Richardson to Moody and the one from Moody to Rhys, contained the pact of nonalienation.

The process issued against Moody and demand for payment of the Richardson notes was made on him. There was no demand made on Rhys, the present owner of the property, and who assumed the payment of the Richardson notes, nor was he made a party to the proceedings further than to be called as a witness on behalf of his daughter, the plaintiff.

The defendant, Moody, thereupon applied to the court for a preliminary injunction on the ground that the said three notes sought to be enforced by the seizure and sale had been paid by Rhys, the purchaser of said property from him, and, further, that the plaintiff was not the bona fide owner of said notes, but was a party interposed by her father, the said Arthur Rhys, to maintain the Richardson notes as a first mortgage to the prejudice of Moody, the holder of the second series of notes.

On a trial of the rule nisi a temporary injunction was issued, but on final hearing the injunction was dissolved and the notes sued on were declared to have been paid.

A new trial was granted and on the second trial the injunction was dissolved to the extent of $1,560, with interest, but as to the balance of the amount of the notes the injunction was perpetuated.

From this judgment Moody has appealed, and the plaintiff has answered the appeal asking that the judgment be amended so as to dissolve the injunction and permit the foreclosure to proceed for the full amount of the three notes, with interest.

Our attention must be first directed to an exception of no cause and no right of action filed in the lower court by the plaintiff to the application for injunction.

The exception was overruled by the court, and this ruling is complained of also in the answer to the appeal.

[1] The contention of the plaintiff seems to be that, inasmuch as Moody alleges that

Rhys had assumed the payment of the Richardson notes, and inasmuch as Moody does not allege that he still owns and holds the second series of notes executed in his favor by Rhys, Moody has no interest to raise the question as to whether the plaintiff was the owner of the Richardson notes, or whether the said notes had been paid by Rhys.

The contention is obviously not well founded, either in law or in fact.

Moody was the maker of the Richardson notes. The assumption of the payment of said notes by Rhys did not release Moody's obligation to the owner and holder of said notes. Moody was made the sole defendant in the executory proceedings.

He, and he alone, was called upon in that proceeding to pay the Richardson notes. He was the owner of the notes executed by Rhys in his favor and secured by mortgage on the land second to that sought to be foreclosed.

[2] If the Richardson notes had been paid by Rhys, as alleged in the petition for injunction, then, the mortgage securing said notes ceased to exist and the notes and mortgage of Moody became first in rank on the property.

[3] As the maker of the Richardson notes and mortgage and as the holder of the Rhys notes and mortgage, Moody had the undoubted right to allege and to prove the extinguishment of the first notes and mortgage, for, it is clear that if the first notes were paid and the mortgage extinguished, the notes and mortgage of Moody became the superior debt against the property.

The interest of a second mortgage creditor to allege and prove the payment of the notes secured by a first mortgage is so obvious as to need no citation of authority.

And such interest carries with it the right to injoin the seizure and sale proposed on the alleged paid notes.

The exception of no cause or right of action was properly overruled.

[4] It appears that at the time Rhys bought the land from Moody the Richardson notes were held by the Bank of Jackson. Rhys arranged with the Bank of Norwood to take up the three notes from the Jackson Bank. In order to do this Rhys obtained from his daughter the sum of $1,560, the amount being given to Rhys by a check drawn by the plaintiff's mother, who had her daughter's funds in bank subject to her own check. Rhys also borrowed from the Norwood Bank the sum of $1,200 for which he gave his demand note. With these two amounts and an additional sum of his own money, or that of his wife, to his credit, the Bank of Norwood sent its New Orleans exchange for $3,035.33 to the Bank of Jackson and received the three Richardson notes. The first of these notes was past due at the time, and the Bank of Norwood attached only the two unmatured notes to the Rhys demand note for $1,200 as collateral and held them as such until the full payment of the $1,200 note, at which time the two Richardson notes were turned over to Rhys. The first note which had matured when the series were taken over from the Bank of Jackson was canceled as paid by the Bank of Norwood and delivered to Rhys some time previous to the delivery to him of the two notes held by the bank as collateral.

It will be seen from the foregoing statement that the real question presented is whether the transaction by which the three notes were acquired from the Bank of Jackson operated as a payment of said notes by Rhys, or was a purchase by him on behalf of his daughter.

[5] The district judge, after having heard the case on two different trials, reached the conclusion that Rhys acted for his daughter and that she became the owner of an interest in said notes to the extent of $1,560, the amount which she had given her father, under an agreement with him that the amount should be used to buy the particular notes.

Inasmuch, however, as the balance used in purchasing said notes was the money of Rhys, the trial judge held that the notes must be regarded as paid to that extent.

We have examined the evidence very carefully and find ourselves unable to reach a different conclusion from that reached by the trial judge.

There is nothing in the evidence to show any fraudulent scheme between Rhys and his daughter, by which the daughter was merely interposed to preserve the first notes and mortgage as against the claim of Moody.

There was nothing illegal or immoral in Rhys acting for his daughter in purchasing said notes.

The notes were valid outstanding notes against the property, payable to any future holder and negotiable by mere delivery. The plaintiff had the same privilege to acquire said notes as any other person, and the fact that her father acted for her instead of some third person does not affect her title.

The evidence shows and it is undisputed that the plaintiff had saved out of her earnings an amount greatly in excess of the $1,560 which she had loaned to her father. It is also uncontradicted that the plaintiff's father had agreed with his daughter that he should invest her money in the notes secured by mortgage on the property he purchased from Moody.

He did receive the check for $1,560 and used it in purchasing the notes through the Bank of Norwood.

We find not the slightest taint of fraud in and no legal inhibition against the transaction, and are therefore constrained to agree with the view taken by the district judge.

In this view no question of the extinguishment of the notes by confusion arises nor of the reissuance of the notes after having been paid, in so far as the interest of the plaintiff in said notes is concerned.

Of course, if the entire series of notes had been paid by Rhys and he had sought to reissue them or to transfer them to some third person after maturity, then, the contention made by plaintiff would have been pertinent.

[6] But in so far as the plaintiff is concerned, her ownership antedates the maturity of the last two notes, and her title, as owner, was not affected by permitting the bank to attach the notes as collateral to the note of her father.

As soon as the notes were released from the pledge, they were restored to the plaintiff as though they had never been pledged.

[7] More than five years had elapsed after the maturity of the first two of the Richardson notes when this suit was filed, and the defendant, Moody, has pleaded the prescription of five years against the said first two notes.

The plea cannot be sustained. Rhys had assumed the payment of said notes in his purchase of the land from Moody and indorsed his promise to pay on the back of the several notes.

He thereby became bound for the payment of said notes in solido with the maker, Moody. Rhys consented for said notes to be used as collateral for his own note and held in pledge until some time within the year prior to the filing of the present foreclosure proceeding. And, besides, he kept the interest paid on said notes up until January 1, 1925.

It is manifest that Rhys could not plead prescription, and neither could Moody, his co-obligor in solido, do so.

[8] It is well settled that the acknowledgment of one of the solidary obligors interrupts prescription as to the others. Boneet v. Tarpy, 30 La. Ann. 494; In re Leeds, 49 La. Ann. 501, 21 So. 617.

For the reasons assigned, the judgment appealed from is affirmed.