Nils M. MAGELSSEN, Plaintiff,

v.

LOCAL UNION NO. 518, OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION, Defendant.

Civ. A. No. 14108–4.

United States District Court

W. D. Missouri, W. D.

April 15, 1965.

Donald H. Loudon, of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for plaintiff.

M. John Carpenter, of McCullough, Parker, Wareheim & LaBunker, Topeka, Kan., Ben E. Pener, Kansas City, Mo., for defendant.

BECKER, District Judge.

### Prior Proceedings

In this case, plaintiff sought an injunction and damages, alleging that he was wrongfully expelled from the defendant union in violation of the Landrum-Griffin Act, Section 411(a)(5) of Title 29 U.S. C.A. A preliminary injunction was issued restraining defendant from enforcing the expulsion order. Thereafter, plaintiff was granted a summary judgment on the sole issue of wrongful expulsion. Magelssen v. Local Union No. 518, Operative Plasterers' and Cement Masons' International Association, (W.D. Mo.) 233 F.Supp. 459. Later, an evidentiary hearing was held on the plaintiff's claim for damages. During the course of this hearing, Section 56 of the Constitution of the defendant union applicable to the expulsion proceedings against the plaintiff was received in evidence. This section is as follows:

"Sec. 56. Charges against a member preferred locally must be made in writing, signed by a member of the Operative Plasterers' and Cement Masons' International Association in good standing, or by a duly authorized representative of the Local Union who has personal knowledge of the offense committed except that personal knowledge shall not be required where charges are preferred by the General President, a representative of the International Association or the General Executive Board, which charges shall be preferred in accordance with the applicable provisions of Sections 15 and 21.

"The charges against a member preferred locally shall be filed with the Local Union in whose jurisdiction offense was committed, stating with reasonable certainty, the facts of the offense charged, the time and place of the occurrence, the names of witnesses, and specifying the section or sections of the Constitution and By-Laws or Working Rules of the Local Union or of the International Association that were violated."

The charges preferred against the defendant obviously do not comply with the union's own constitution. This was admitted by the official of the defendant union who managed the expulsion proceedings, and who testified in behalf of the union in this cause. On this subject, the following occurred during the examination of Mr. Fiatte, the business representative, secretary, treasurer and recording secretary, who managed the expulsion proceedings:

"THE COURT: Now, as I read the notice that you signed * * * of June 6, 1962, the section of the International Constitution is specified but the notice fails with reasonable certainty to state the facts of the offense charged, the time and place of the occurrence, and the names of the witnesses. It does specify the section or sections of the Constitution and By-Laws.

"Is this the applicable provision of the Constitution that applies here that I have read?

"MR. FIATTE: Well, yes, it is now, yes. It was at that time. I will admit that I slipped up. But, too, Mr. Magelssen says he never, nobody ever read the charges to him, as he testified.

"THE COURT: Well, as I read the law, the Act of Congress, the fact of the offense must be stated in writing. It isn't enough to advise him orally about it, because this leaves the matter open to argument about whether he knew about it, like it is now. And I intend to see that a record is made so that your counsel can get a review of this and get an interpretation of the Landrum-Griffin Act.

"I also advised your counsel that while these matters were pending, that if they felt that these proceedings were defective, that there was nothing in the injunction I rendered which would prevent them from reinstituting proceedings with a notice which complied with the interpretation which I gave the law.

"But I feel like this notice not only was not sufficient under the Act of Congress, but wasn't sufficient under the Constitution of the Union. Had it been sufficient under the Act of Congress, in my judgment, and not sufficient under the Constitution of the Union, I wouldn't have taken any action about it because I think it is up to the union to interpret its own Constitution. The courts have no right of review.

"Was there any other writing constituting a charge other than this one of June 6?

"MR. FIATTE: No, sir, nothing but your certificate of your incorporation from the State of Missouri.

"THE COURT: Well, that was a document that constituted some evidence that was used against the defendant in the case.

"MR. FIATTE: That's right.

"THE COURT: From your experience, don't you concede that this notice does not comply with the Constitution of the Union?

"MR. FIATTE: I have just reported that I did make an error, yes, sir."

While the judgment in this case is not based upon the violation of the union's constitution, in any respect, the provisions thereof are set forth above to show that the union's standards for particularity in the charges in an expulsion proceeding are more exacting than the construction which has been given to the Landrum-Griffin Act in this case. So it can hardly be said that too great a burden has been imposed on the defendant by the construction given to the Landrum-Griffin Act.

### Facts on Damages

On June 26, 1962, the recommendation of the defendant's executive board that the plaintiff be expelled was affirmed by a vote of the defendant union's membership. At that time, the plaintiff was employed by the John Rohrer Contracting Company as a journeyman cement finisher in charge of more than five workers at a gross hourly wage of $3.87½ per hour, subject to a 15-cent hourly deduction for the union health, welfare and trust fund. Plaintiff was therefore earning a net wage of $3.72½ per hour at that time.

On June 27, 1962, he lost three and a half hours of work in net wages as a result of the expulsion proceedings of June 26, 1962. His employer was notified that the plaintiff had been expelled from the union, and immediately removed the plaintiff from work for three and a half hours. On the same day, the employer restored him to work when the employer was advised that the expulsion proceedings were not final and were subject to appeal by the plaintiff. On this day the plaintiff lost net wages in the sum of $13.04.

Plaintiff's appeal to the General Executive Board from the expulsion proceedings of the local union was denied and

the expulsion affirmed on July 31, 1962. This was the last administrative remedy available to the plaintiff. Plaintiff was then expelled.

On or about August 13, 1962, plaintiff's employer was informed by the plaintiff of the plaintiff's expulsion. Plaintiff's employer, a Kansas corporation, employed only union members in its cement work. Its work was conducted in both Missouri and Kansas. As a direct result of his expulsion, the plaintiff lost his employment with the John Rohrer Contracting Company from August 13 until December 17, 1962, when he was re-employed as a result of the preliminary injunction issued in this cause.

The defendant contends that the expulsion proceedings were not the proximate cause of plaintiff's loss of employment during this period because of the Kansas right-to-work law, because of Sections 8(b)(2) and 8(a)(3) of the Labor-Management Relations Act, and because plaintiff did not seek work through the union's placement service. However, the evidence in this case shows, whatever may have been the theoretical, technical, legal rights, privileges and duties of the plaintiff and his employer and of the union, it was impractical for plaintiff's employer to continue him in service after the expulsion proceedings became final, and prior to the issuance of the preliminary injunction herein. The evidence clearly shows that plaintiff's loss of employment on or about August 13, 1962, and thereafter until December 17, 1962, was a direct result of his expulsion from the defendant union. The net wages without allowance for mitigation which the plaintiff probably would have earned from August 13, 1962 to December 17, 1962 in the absence of the expulsion proceedings were approximately $2,700.00. Plaintiff's lost net wages without mitigation as a direct result of the expulsion was $2,700.00.

The defendant contends that the plaintiff did not diligently attempt to mitigate the damages. In this connection the defendant contends that the plaintiff did not apply to the union for assignment to work, suggesting that it might have procured employment for the plaintiff. The evidence of the defendant on this point is very unsatisfactory. And even assuming that the plaintiff has the burden of proof to show inability to secure employment through the union, that burden has been met.

The purpose of the expulsion proceedings was to deny the plaintiff his right to employment as a member of the defendant union. It is apparent that the defendant would not have secured employment for the plaintiff had he applied to it after the expulsion proceedings became final.

Except in one instance, the evidence clearly shows that the plaintiff undertook diligently to secure employment at other vocations for which he was qualified. It is true that he did not seek non-union employment. However, it would have jeopardized his position and been impractical for him to seek employment as a non-union cement finisher while claiming that he was wrongfully expelled and still a union member. Plaintiff did attempt to secure employment in several other lines of work without success, with one exception. He applied for work with the Missouri State Highway Commission by whom he had been employed in the past. He was advised that he could probably secure work with the Missouri State Highway Commission at a salary of $327.00 per month. The evidence showed that he failed diligently to pursue this prospect of employment and thereby failed to mitigate his loss and damage. The amount which he probably would have been paid by the Missouri State Highway Commission had he pursued this prospect of employment was $327.00 per month. This should be deducted from the net wages of $2,700.00.

Plaintiff also claims that he has lost wages during periods of bad weather in the Kansas City area because the defendant has not caused the return of his dues book from the International Association. Plaintiff surrendered this dues book to the defendant, which transmitted it to the International Association. It has not

been returned. A dues book is normally issued by the International Association at the local union's request. The International Association has not been made a party to this action. The evidence fails to establish that the defendant union is responsible for the failure of the International Association to return the plaintiff's dues book. In this connection, the evidence fails to establish that the plaintiff would have secured employment in another local union's jurisdiction as a union cement finisher during periods when work was unavailable in Kansas City because of bad weather.

During the period in question, plaintiff was paid unemployment compensation benefits in the sum of $480.00.

The plaintiff has sought to recover damages for attorney's fees expended in connection with the wrongful expulsion.

### Conclusions of Law

The plaintiff has the burden of proving by a preponderance of the evidence and beyond speculation and conjecture, that he has sustained damage as a direct result of his wrongful expulsion by the defendant union. The plaintiff has met this burden of proof.

The defendant has the burden of proving by a preponderance of the evidence beyond speculation and conjecture that plaintiff has failed to exercise reasonable diligence to mitigate plaintiff's damages. 15 Am.Jur. Damages § 329, pp. 768–69; 25 C.J.S. Damages § 144e, p. 791. The defendant has met this burden of proof.

The defendant local union was, and is, obligated to exercise its best efforts to secure return of the dues book of the plaintiff from the International Association. The plaintiff is entitled to a mandatory injunction against defendant to enforce this obligation.

The defendant is not entitled to a diminution of plaintiff's damages by reason of payment of unemployment compensation benefits to plaintiff. Gypsum Carrier, Inc. v. Handelsman, (C.A. 9) 307 F.2d 525; Gardner v. National Bulk Carriers, Inc., (E.D.Va.) 221 F.Supp. 243; 25 C.J.S. Damages § 99, n. 94, p. 647.

Attorney's fees are not allowable in a suit of this character and therefore will not be awarded. McGraw v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, et al., (E.D.Tenn.) 216 F.Supp. 655; Leonard v. M.I.T. Employees' Union, (D.Mass.) 225 F.Supp. 937.

Punitive damages are not recoverable in an action of this character. Burris v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (W.D.N.C.) 224 F.Supp 277. However, assuming that punitive damages are recoverable, the plaintiff has not met the burden of proving that the action of the defendant was malicious. Therefore, the plaintiff is not entitled to punitive damages.

The damages which plaintiff is entitled to recover in this action are the damages of $2,700.00 less the sum he probably would have earned had he accepted employment with the Missouri State Highway Commission at $327.00 per month.

Plaintiff is ordered to submit a proposed form of judgment in accordance herewith on notice to the defendant under Rule 6(c) of this Court.