Alton J. BAILEY

v.

J. Harvey NETTER, President of Local 1830 of the International Longshoremen's Association.

Civ. A. No. 3243.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
March 30, 1967.

Johnnie A. Jones, Baton Rouge, La., for plaintiff.

J. W. Cole, Jr., T. C. Strickland, Jr., Strickland & Cole, Port Allen, La., for defendant.

WEST, District Judge:

This case arises out of a dispute between Alton J. Bailey, a member of Local 1830 (Port Allen, Louisiana) of the International Longshoremen's Association, and J. Harvey Netter, President of that Local. On February 3, 1964, at a general meeting of the membership, the plaintiff, Alton J. Bailey, who was a member in good standing, protested against the manner in which the minutes of an executive committee meeting and the minutes of a general meeting were being read. Plaintiff maintained that they were not being read in accordance with the union's by-laws. The method of reading the minutes was changed to conform to what defendant believed to be in accordance with union rules, but the plaintiff continued to argue that Roberts Rules of Order should be followed. When the plaintiff refused to sit down he was fined $1.00 by the defendant, who was presiding over the meeting as President of the Local. Another member speaking to the same subject was also fined $1.00. Due to the continued protests of the plaintiff, the meeting finally had to be adjourned without completing the business before it. Plaintiff refused to pay his fine. About seven months later, when plaintiff went to pay his dues, his tender of dues was refused because he had failed to pay the $1.00 fine assessed against him. Thereafter a letter was sent by the defendant, as President of the Local, to the various stevedoring companies in the Baton Rouge and Port Allen area listing those who were not in good standing with the union, including the plaintiff. This, of course, prevented the plaintiff from being hired for longshoreman's work by the various stevedoring concerns as long as he was not a member in good standing of the union. On July 20, 1965, this suit was filed wherein the plaintiff sought injunctive relief and damages for what he alleged to be violations by the defendant of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq. It is plaintiff's contention that the fine imposed and the subsequent "blacklisting" of plaintiff constituted disciplinary action taken in violation of Section 101(a) (5) of the Act, 29 U.S.C.A. § 411(a) (5), and that the disciplinary action taken was an attempt to deprive him of the "freedom of speech" guaranteed him by Section 101(a) (2) of the Act, 29 U.S.C.A. § 411 (a) (2).

On July 23, 1965, this Court issued a temporary restraining order, temporarily restraining and enjoining the defendant from continuing the blacklisting of the plaintiff and from refusing to accept the plaintiff's tender of dues without fine or penalty, and further ordering defendant to notify all prospective employers that the name of the plaintiff was deleted from the "no-hire-list." Subsequent to the issuance of this restraining order, the parties to this suit submitted their dispute to the National Labor Relations Board. The N.L.R.B. assumed jurisdiction and finally effected a settlement of the dispute whereby the union and its President, J. Harvey Netter, agreed to pay to the plaintiff all lost earnings resulting from the blacklisting. Plaintiff was accordingly paid the sum of $836.38. The defendant and the union further agreed to, and did notify all prospective employers that the plaintiff was no longer blacklisted, and agreed that it would not in any way cause or attempt to cause any of said employers to discriminate against the plaintiff because of his refusal to pay the $1.00 fine which had been levied against him. Plaintiff approved and signed this settlement agreement and received the $836.38 from defendant. He now contends that while the N.L.R.B. gave him all of the relief it was empowered to give, nevertheless, this Court should now give him additional relief, i. e., punitive damages, damages for wages allegedly lost since the settlement agreement was entered into, attor-

---

ney fees, and permanent injunctive relief. Defendant urges lack of jurisdiction on the ground that since the N.L.R.B. assumed jurisdiction it preempted the jurisdiction of this Court. Alternatively the defendant contends that there was no violation of the Labor Management Reporting and Disclosure Act by the defendant, and that even if there was a violation, plaintiff has failed to prove any damages resulting therefrom, other than those for which he was compensated by the settlement effected by the National Labor Relations Board.

Section 102 of the Labor Management Reporting and Disclosure Act, 29 U.S.C.A. § 412, specifically gives this Court jurisdiction to hear actions involving alleged violations of Section 101 of the Act, such as is alleged by the plaintiff in this suit. The fact that the N.L.R.B. saw fit to also exercise its jurisdiction and to attempt to settle this dispute does not deprive this Court of its jurisdiction. Vaca, et al. v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (February 27, 1967).

In view of the fact that the plaintiff has, in the opinion of this Court, completely failed to prove any damages resulting from the alleged violation of the Act, other than those for which he was compensated by the settlement referred to, there is no need to pass upon the question of whether or not the actions of the defendant did, in fact or in law, constitute a violation of Section 101(a)(5) and/or Section 101(a) (2) of the Act.

As of April 19, 1966, the date the settlement agreement was approved by both the plaintiff and the defendant, the amount necessary to make plaintiff whole insofar as back wages was concerned, was stated to be the sum of $836.-38. This amount was paid by the defendant and accepted by the plaintiff as compliance with the settlement agreement. There is no evidence whatsoever to support the plaintiff's contention that since that time he has "by verbal instructions" been blacklisted by the defendant. Not one single bit of evidence was presented to back up that contention. It is true that according to his testimony the plaintiff did not work as many hours as certain other longshoremen during the past year. But the evidence shows that he did not make himself available for work as regularly as did those who worked more hours. For example, the plaintiff preferred not to work cargo, while others accepted any work they could get. Also, even though there was a shape-up, at which longshoremen were hired, at 7:00 a. m. and another at 5:00 p. m. each day, plaintiff usually elected to appear at only one shape-up a day while others appeared at both the morning and evening shape-ups. There was no evidence of any discrimination by employers against this plaintiff since the restraining order was issued by this Court on July 26, 1965, nor since the settlement agreement was entered into between the plaintiff and the defendant on April 19, 1966. Thus the Court finds that even assuming that there was a violation of the Labor Management Reporting and Disclosure Act by the defendant, plaintiff has failed to prove that he is now entitled to any damages resulting therefrom. Also, the plaintiff is not entitled to recover attorney fees incurred as a result of this suit. McCraw v. United Association of Journeymen and Apprentices of Plumbing, etc., 216 F.Supp. 655 (E.D.Tenn.1963), aff. 6 Cir., 341 F.2d 705; Magelssen v. Local Union No. 518, Operative Plasterers' and Cement Masons' International Association, 240 F.Supp. 259 (W.D.Mo. 1965); Vars v. International Brotherhood of Boilermakers, etc., 215 F.Supp. 943 (D.Conn.1963), 2 Cir., 320 F.2d 576.

There being no evidence to warrant the issuance of a permanent injunction herein, plaintiff's demand therefor will be rejected and this suit will be dismissed at plaintiff's cost.

Judgment will be entered accordingly.