**Clifton BURLEY**

v.

**BASTROP LOAN COMPANY, INC.**

**Civ. A. No. 75–0432.**

United States District Court, W. D. Louisiana, Monroe Division.

Dec. 30, 1975.

Supplemental Opinion Feb. 11, 1976.

Donald Juneau, New Orleans, La., for plaintiff.

James Hobbs, Jones, Blackwell, Chambliss, Hobbs & Henry, West Monroe, La., for defendant.

## RULING AND ORDER

DAWKINS, Senior District Judge.

This is a case arising under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R., Part 226, promulgated by the Federal Reserve Board under that Act.

Plaintiff was a loan customer of defendant, the Bastrop Loan Company. On March 21, 1975, defendant filed suit in the Fourth Judicial District Court of Louisiana, Morehouse Parish, against plaintiff and his wife, now deceased, for collection of the balance due upon a promissory note. The note was secured by a chattel mortgage of even date, covering certain movable property, and also by a special mortgage upon plaintiff's residential property. Plaintiff petitioned this Court for removal of the case under the federal question removal statute, 28 U.S.C. § 1441, alleging that the case was one arising under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. We granted the Loan Company's motion to remand *ex parte* and denied plaintiff's motion for a rehearing. *Burley v. Bastrop Loan Co.,* 392 F.Supp. 970 (W.D.La., 1975).

Plaintiff, through counsel, then sent to counsel for the Loan Company a letter of rescission of the loan obligation, on the grounds that the Loan Company had failed to make the required disclosures to its customer under the Act and Regulation Z. A few days later, plaintiff filed this plenary action here under the Truth-in-Lending Act.

■ Plaintiff now has moved for summary judgment, which we granted on August 1, 1975. We held then that the Loan Company had failed to disclose to plaintiff the acceleration clause on the face of its promissory note, in violation of 15 U.S.C. § 1639(a)(7) and 12 C.F.R. § 226.8(b)(4). The disclosure statement executed by plaintiff on July 15, 1972, contained no language at all to warn him that the Loan Company could declare the entire unpaid balance due and

payable should plaintiff default in his payments, although such was set out in the promissory note. This is a clear violation of 12 C.F.R. § 226.8(b)(4), which requires that "the amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments" be revealed on the disclosure statement. Chief Judge Heebe, of the United States District Court for the Eastern District of Louisiana, has held that the absence of such a disclosure renders the creditor liable for damages under the Act. *Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722 (E.D.La., 1974). See also *Johnson v. McCrackin-Sturman Ford, Inc.,* 381 F.Supp. 153 (W.D.Pa., 1974), *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955 (N.D.Ill., 1972).

Defendant urges upon us *Barksdale v. Peoples Financial Corp.,* 393 F.Supp. 112 (N.D.Ga., 1975), as supporting its position that there need be no disclosure of acceleration. *Barksdale* is distinguishable in that it involved an acceleration clause which provided for a rebate of all unearned interest. *Meyers* and the matter *sub judice,* on the other hand, concern acceleration of all interest, whether earned or not as of the date of default. Such acceleration clauses are enforceable and nonusurious in Louisiana. *Unity Plan Finance Co. v. Green,* 179 La. 1070, 155 So. 900 (1934). The *Barksdale* acceleration clause did not impose a § 226.8(b)(4) "charge," whereas the one before us requires that plaintiff pay the unrebated interest on the obligation if he should default in his payments. Defendant also cites *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904 (N.D.Ga., 1975), in support of its position that failure to advise the loan customer of an acceleration clause is not a violation of 12 C.F.R. § 226.8(b)(4) if there is no change in the total amount due on the note. But *Barrett* rejected that sophistry, as do we. In *Barrett* the Court held that since "the note makes no provision for rebate of unearned interest upon acceleration, the diminution of the period over which the finance charge would be spread constitutes a 'charge' which is passed on to the consumer as a result of default." *Barrett, supra,* at 907. *Barrett* has been followed by another judge of the same Court, and is in keeping with the rationale of *Meyers* and *Garza* on this subject. *McDaniel v. Fulton National Bank,* 395 F.Supp. 422 (N.D.Ga., 1975).

We elect to follow the last cited rulings since they seem to us to be in harmony with the spirit of the Truth-in-Lending Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

Here plaintiff was not given information as to the added cost of the loan resulting from defendant's acceleration of unearned interest, and therefore was unable successfully to compare credit terms. *Burgess v. Charlottesville Savings and Loan Association,* 477 F.2d 40 (4th Cir., 1973). Although plaintiff alleged other violations of the Act, nondisclosure of the acceleration clause is undisputed and is sufficient to subject defendant to liability. *Powers v. Sims and Levin Realtors,* 396 F.Supp. 12 (E.D. Va., 1975).

In our ruling of August 1, 1975, we held that plaintiff was not entitled to recover the statutory damages of $1,000 under 15 U.S.C. § 1640(a)(2)(A), because of the running of the one-year statute of limitations in 15 U.S.C. § 1640(e). *Sosa v. Fite,* 498 F.2d 114, 121 n. 9 (5th Cir., 1974); *Stevens v. Rock Springs National Bank,* 497 F.2d 307 (10th Cir., 1974); *Wachtel v. West,* 476 F.2d 1062 (6th Cir.), cert. denied 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973). Accordingly, we requested counsel for both parties to submit briefs as to what remedies still are available to plaintiff. We particularly called for briefing as to whether plaintiff was entitled to reasonable attorney's fees here.

Plaintiff seeks rescission of the loan obligation under 15 U.S.C. § 1635.

This provision clearly is applicable to the facts of this case, since the obligation was secured by a mortgage upon plaintiff's residence. Plaintiff's counsel dispatched the letter of rescission to defendant's counsel on April 29, 1975. Defendant did not cancel the mortgages upon plaintiff's movable and real property, nor did it return all interest payments and downpayments to plaintiff within ten days of receipt of the letter. Indeed, the Loan Company still maintains its lawsuit in State Court for the balance due upon the note. Title 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.9(d) require a creditor, within ten days after receipt of a notice of rescission, to "return to the customer any money or property given as earnest money, downpayment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." Ordinarily, the customer has three business days from the close of the transaction to rescind the transaction. 12 C.F.R. § 226.9(a). However, where the creditor fails to make the required disclosures, the right of rescission continues for three years from consummation of the transaction. 15 U.S.C. § 1635(f); cf. Sosa v. Fite, 498 F.2d 114, 117 (5th Cir., 1974). Thus a loan customer may bring an action for judicial rescission under 28 U.S.C. § 1337 even if he is time-barred from suing for damages under 15 U.S.C. § 1640. Sosa v. Fite, 465 F.2d 1227 (5th Cir., 1972).

On remand of the first Sosa appeal, the District Court granted rescission, but entered a judgment in favor of the creditors for the balance due and imposed a judgment lien upon Sosa's real property. Later the Fifth Circuit Court of Appeals reversed the grant of a judicial lien. Sosa v. Fite, 498 F.2d 114 (5th Cir., 1974). Holding that the creditors' failure to perform their statutory duties under 15 U.S.C. § 1635(b), by returning the downpayment and earnest money and canceling the mortgages, absolved Mrs. Sosa from tendering back the loan proceeds she received, the Court further ruled that ownership of the loan proceeds vested in Mrs. Sosa without any obligation on her part to return them:

"It is true that the statute contemplates an orderly progression of specific events, culminating in the debtor's tender and the creditor's recoupment, which never came to pass in this case. Specifically, section 1635(b) envisions responsive action on the creditor's part to a rescission notice, after which the debtor then becomes obligated to tender either the property or a sum reflecting its reasonable value. . This precise statutory scheme was aborted [sic] in this case due to the creditors' failure to comply with statutory requirements, hence Sosa's responsibility to make the specific statutory tender was excused by the creditors' omissions.

"To hold otherwise would create a gross anomaly, for no tender in the exact scheme envisioned by the statute could ever be effected by a debtor in the most egregious of circumstances, namely when a creditor steadfastly refused to perform his express obligations upon receiving the notice of rescission. Congress scarcely could have contemplated such a disruptive commercial stand-off. We therefore conclude that under the circumstances of this case the debtor's obligation to restore the creditor to the status quo ante was discharged by an offer accompanying notice of rescission, since the creditor within ten days of notification failed to return all monies previously paid by the debtor or to reflect dissolution of the security interest.

"Our disposition of this case is not altered by the recent decision in Ljepya v. M. L. S. C. Properties, N.D.Cal. 1973, 353 F.Supp. 866. In that case, the court permitted a borrower to rescind a tainted loan transaction violative of Truth-in-Lending on condition of repaying the principal, without interest, to the creditor within ten days of judgment. There is no indication in that case that the borrowers had ever attempted to return the proceeds of the loan, but instead the debtors were

seeking simply to extricate themselves from the unwanted transaction. In that situation, it would have been consonant with the statute only for the debtors to remit to the creditor the loan proceeds in order to rescind the agreement, inasmuch as section 1635(b) is clearly designed to restore the parties as much as possible to the *status quo ante.* But in the case *sub judice,* Sosa's express offer of restoration fell on deaf ears, thereby rendering applicable, upon the creditor's failure to comply with section 1635(b), the plain directive of the statute: 'If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor *without obligation on his part to pay for it.'* 15 U.S.C.A. § 1635(b) (emphasis supplied).

"Congress' intended operation of the statute, as evidenced by the 1635(b) creditor-forfeiture provision, therefore clearly calls for a debtor windfall if the creditor does not set about to rectify his earlier nondisclosures in the manner envisaged by the statute. *In fact, the Act flatly provides that if his creditor continues in his untoward ways, the debtor incurs no obligation to pay for property which he is at the same time entitled to keep.* That this result was intended is clear beyond peradventure, for one of the measure's principal sponsors in the House stated: '[I]f the seller does not come back to pick up [his property] after a 10-day period [following the notice of rescision], the buyer can keep this item and he does not even have to pay for it. . . . ' 114 Cong.Rec. 14398 (1968) (remarks of Congresswoman Sullivan)." 498 F.2d 118–120 (footnote omitted). (Emphasis added.)

■ Similarly, here defendant's obligation was clear when it received plaintiff's notice of rescission. But as did the creditors in *Sosa,* the Loan Company "failed to carry out any of [its] statutory duties, and thus [its] lament of any equity being visited upon [it] is utterly un-persuasive, for the power was completely [its] to prevent this parade of creditor horribles from ever occurring." *Id.* at 120. In *Powers v. Sims and Levin Realtors,* 396 F.Supp. 12 (E.D.Va., 1975), the creditor loaned $5,000 to the plaintiffs to refinance an earlier loan for making home improvements, with those plaintiffs' home encumbered as security. A timely rescission notice was tendered to the creditor, who refused to release the mortgage and return the downpayment. The Court followed *Sosa's* reasoning, holding that the creditor had forfeited its rights under the loan obligation:

"First, the defendant by its refusal to rescind the transaction and return all payments within 10 days of receipt of the recision notice frustrated the orderly sequence of events envisioned by § 1635(b) recision notice; creditor's release of the mortgage and return of payments; debtor's tender; and creditor's taking possession—see *Sosa v. Fite, supra,* 498 F.2d at 119, and, furthermore, by its insistence upon tender of money owed on a previous loan, and the return of the air conditioner and the reasonable value of the home improvements before it would rescind, defendant indicated that it did not intend to comply with § 1635(b) and would instead rewrite the Act to suit its own notions of debtor-creditor law. There is an elementary principle of contract law that tender by party A is excused when party B fails to or refuses to perform the essential prerequisites which trigger tender by party A. See 86 C.J.S. Tender § 5. Because of defendant's action in abandoning the orderly sequence of events contemplated by § 1635(b) and its unwarranted insistence on its own preconditions before rescinding the transaction and returning the money paid by plaintiffs, the Court concludes that tender on the plaintiffs' part would have been a futile gesture and that plaintiffs were therefore excused from making a § 1635 tender. Therefore, on this first ground title to the air conditioner and the home improvements vested in the plaintiffs ten days

after their receipt of defendant's letter of September 25 in which defendant rejected and denied their right of recision. *Sosa v. Fite, supra,* 498 F.2d at 119." 396 F.Supp. at 25–26.

 Defendant cites *Palmer v. Wilson,* 502 F.2d 860 (9th Cir., 1974), for the proposition that a rescission decree could be conditioned upon tender by the debtor, but does not advance any reasons why, in light of its violations of the Act and Regulation Z, it should be given any equitable benefit. He who seeks equity must do equity. *Zanders v. Louisiana State Board of Education,* 281 F.Supp. 747 (W.D.La., 1968). Had defendant dismissed its State Court suit, at the very least, and agreed to re-finance the outstanding balance, we may have been disposed to frame a decree which would have called upon plaintiff to enter into an agreement whereby he could discharge his indebtedness to defendant by making small monthly installment payments over a number of years. See *Sprague v. Ticonic Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). But in view of defendant's failure to mitigate its violations of law under the Act and Regulation Z, we hold that it must return to plaintiff all downpayments, interest payments, and earnest money paid by him, with interest at the legal rate from date of judicial demand. We further order that defendant cancel and terminate the mortgages upon plaintiff's property, both movable and immovable, and dismiss with prejudice its suit against plaintiff in the State Court, since it is clear that it cannot recover against plaintiff on a void, annulled obligation. *Rhys v. Moody,* 163 La. 1039, 113 So. 367 (1967); *First National State Bank v. Barker,* 234 So.2d 770 (La.App., 1st Cir., 1970); see Articles 2751–53 of the Louisiana Code of Civil Procedure.

*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), stands for the proposition that a federal court may not, absent congressional authority, allow attorney's fees on a "private attorney-general" theory. This calls into question recent Fifth Circuit decisions granting attorneys' fees to victorious plaintiffs in Truth-in-Lending cases on the basis of the private attorney-general rule. *E. g., Sellers v. Wollman,* 510 F.2d 119, 123 (5th Cir., 1975); *Sosa v. Fite, supra,* 498 F.2d 121–122.

 Notwithstanding, *Alyeska* left standing the rule permitting judicial levy of attorneys' fees without congressional authority in cases where the losing party acted in bad faith or for oppressive reasons. *Alyeska, supra,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d at 153–154. Thus a pre-*Alyeska* decision as to attorneys' fees was reaffirmed post-*Alyeska* where it appeared that the parties cast, public officials, had refused obdurately to comply with the abortion decisions of the Supreme Court of the United States. *Doe v. Poelker,* 515 F.2d 541 (8th Cir., June 2, 1975). Here plaintiff argues that defendant acted in bad faith in failing to comply "with the pellucid directory provisions of 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.9(d)." The Loan Company responds that "[t]here is nothing in the record to show bad faith * * * which must be determined from all of the facts, and it could never be concluded from a mere assertation [*sic*] of an affidavit, and if the plaintiff is seeking relief based upon either the bad faith or good faith of the defendant, then the Motion for Summary Judgment must fail, and we must resort to a trial as to intention and the faith, whether good or bad, of the defendant." There is nothing in the record, as it now stands, which convinces us that defendant was in such bad faith as to warrant levying attorneys' fees against it. But we deem it unnecessary to reach that question, since we do find clear congressional authority for granting attorneys' fees to plaintiff.

 A court may allow attorneys' fees "in the case of *any successful action* to enforce the foregoing liability," says 15 U.S.C. § 1640(a)(3). This is a clear reference to an action against a creditor for non-disclosure violations. While this plaintiff cannot recover the $1,000 maximum damages under 15 U.S.C.

§ 1640(a)(2)(A), because more than one year has passed since the loan transaction was consummated, he still may obtain relief by rescission of the obligation under 15 U.S.C. § 1635. Liability for non-disclosure by defendant therefore still exists, but it cannot be compelled to pay any statutory damages. Had plaintiff filed this action prior to the running of the one-year period, he would have been awarded both the statutory damages and rescission, and would not have had to choose between remedies. *Eby v. Reb Realty Co.,* 495 F.2d 646, 651–652 (9th Cir., 1974). See also *Ljepava v. M. L. S. C. Properties,* 511 F.2d 935, 945 (9th Cir., 1975); *Sellers v. Wollman, supra.*

We hold that § 1640(a)(3) grants us adequate authority to allow attorney's fees, this being in accord with congressional policy as to the Truth-in-Lending Act's remedial purposes. *Mourning v. Family Publications Services, Inc.,* 411 U.S. 356, 363–366, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). See *Sosa v. Fite, supra,* 498 F.2d 114, at 121–122; *Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740, 747–748 (5th Cir., 1973). We thus hold that the fee award provisions of § 1640(a)(3) are separable from the one-year limitation in § 1640(e). While it is not clear that Congress originally contemplated actions for rescission under 15 U.S.C. § 1635, when it amended the Truth-in-Lending Act on October 28, 1974 (Pub.L. 93–495, 88 Stat. 1500), it did not choose legislatively to overrule or limit the two *Sosa* decisions regarding rescission. It therefore properly may be concluded that the present statute is sufficient authority for allowing attorneys' fees. § 1640(a)(3) must not be read in a vacuum, it must be read *in pari materiae* with its companion sections, and it may not be divorced from the other basic prophylactic provisions of the Act.

In this respect, plaintiff points to the attorneys' fees provision in the recently enacted Extension of the Voting Rights Act of 1965. Pub.L. 94–73, 89 Stat. 400 at 404 (August 6, 1975). Passed in reaction to *Alyeska* (see S.Rep. 94–295, 94 Cong., 1st Sess. 39–43, 1975 U.S.Code Cong. & Admin.News pp. 806–810), this statute allows attorneys' fees to be awarded in any action to enforce the guarantees of the Fourteenth and Fifteenth Amendments, not just those brought under 42 U.S.C. § 1973j(f), the private civil enforcement provision of the Voting Rights Act of 1965. Still another example of the courts' liberality in granting attorneys' fees as a means of fully enforcing remedial legislation is the Landrum-Griffin Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531, which established a comprehensive set of federal controls over internal management of labor unions. Title I of Landrum-Griffin created the union member's bill of rights, which authorizes enforcement by private litigation. 29 U.S.C. § 412. Title I does not, however, contain any reference to counsel fees, although in other sections of the Act there is authorization for such awards where there has been a refusal to permit inspection of union books, 29 U.S.C. § 431(c); where there has been an unauthorized disposal of union assets, 29 U.S.C. § 501(a); or an unauthorized personal profit has been made, 29 U.S.C. § 501(b).

Initially, courts reasoned that attorneys' fee awards impliedly were excluded except in cases arising under 29 U.S.C. §§ 231(c), 501(a), and 501(b), and if Congress intended such awards, it expressly could enact them. *E. g., Magelssen v. Plasterers' Local 518,* 240 F.Supp. 259 (W.D.Mo., 1965); *McCraw v. United Association of Journeymen,* 216 F.Supp. 655 (E.D.Tenn., 1963) aff'd 341 F.2d 705 (6th Cir., 1965). But in *Gartner v. Soloner,* 384 F.2d 348 (3rd Cir., 1967), cert. denied 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968), such a narrow reading of the statute was rejected and the civil rights of union members guaranteed by Title I were held to be worthy of an added enforcement clout by providing for awards of attorneys' fees. The congressional objective of union democratization was expressly noted in *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), and considered to be

a sufficient basis for allowing fees for successful Title I litigation to enjoin an illegal expulsion from the union, even though such a fee award was not explicitly authorized by Title I.

A refusal to allow attorney's fees here would be as erroneous as the earlier decisions under Landrum-Griffin, serving only to impede or chill the rights of those who would resort to judicial enforcement of their rescission rights guaranteed by the Truth-in-Lending Act, thus blunting congressional policy and purpose in enacting a remedial statute.

Counsel for plaintiff is directed to file a sworn statement of his claim for attorney's fees within ten days, and counsel for defendant will be granted ten days from the date of such filing to respond to the reasonableness of the attorney's fees requested.

## SUPPLEMENTAL OPINION

Since rendition of our Ruling and Order in this case on December 30, 1975, we have become aware of *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, decided by the United States Court of Appeals for the Third Circuit on December 16, 1975, and reported at 4 C.C.H. Consumer Credit Guide ¶ 98,499. That case reversed the decision reported at 381 F.Supp. 153 (W.D.Pa., 1974). Since the District Court's holding in *McCrackin-Sturman,* in finding that defendant's failure to disclose the acceleration clause is a violation of 12 C.F.R. § 226.8(b)(4), was one of the cases upon which we relied, we now re-examine our Ruling in light of this appellate decision.

*McCrackin-Sturman* concerned a credit sale of a car, where the disclosure statement provided that upon default the debtor is obligated to pay "such expenses incurred by Seller in effecting collection under the Contract as may be allowed by law." *Johnson, supra,* n. 4. The Court there found that this provision brought into play the whole panoply of Pennsylvania law requiring the creditor to rebate the entire unearned portion of the finance charge, so that a debtor would have to pay only the unpaid principal of

the loan. The retail installment contract informed the customer of the right of acceleration, but did not expressly state that the unearned portion of the finance charge would be rebated. *Id.,* at n. 13. The Court found that the meaning of the phrase "default, delinquency, or similar charges" in 15 U.S.C. § 1638(a)(9) was that "charges" was modified by "default" or "delinquency," and did not mean "obligation" as was construed by the Court in *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, at 959 (N.D. Ill., 1972).

The present case is distinguishable from *Johnson* in several respects:

*First,* the only provision relating to default or delinquency in the *Burley* disclosure statement was

DEFAULT CHARGE on any installment in default ten (10) days or more from its due date, in the amount of $5.00 or (5%) percent of the amount of the installment, whichever is less, will be paid by the borrower.

The promissory note signed by Burley contained the following provision regarding default and delinquency:

A default in the payment of any installment hereof shall, at the option of the holder, and without notice or demand, render the entire unpaid balance at once due and payable, and acceptance of payment or payments after default shall not constitute a waiver thereof. In event action for the enforcement of collection of this note is instituted, there shall be immediately due, in addition to the unpaid balance and delinquent charges, all costs and expenses of such action.

Such brief language in the disclosure statement does not begin to inform the borrower of the consequences of the default or lateness in payments, as more fully set out in the promissory note. Burley clearly was not as well informed as were the plaintiffs in *Johnson.*

■ *Second,* although Louisiana law obligates the accelerating creditor to rebate the unearned interest on an obligation, this rebate is conditioned upon his

filing suit to collect the obligation; the creditor has the *power* but not the *right* to collect interest as yet unearned on the obligation. *Heirs of Williams v. Douglass,* 47 La.Ann. 1277, 17 So. 805 (1895); *Unity Plan Finance Co. v. Green,* 148 So. 297 (Orleans App., 1933), *reversed on other grounds* 179 La. 1070, 155 So. 900 (1934). This is different from Pennsylvania law on the subject, which does not require that suit be filed as a condition precedent for collecting the unpaid principal.

*Third,* the Louisiana cases cited have been statutorily modified by the new Louisiana Consumer Credit Law. A Louisiana accelerating creditor who sues must rebate the unearned finance charge:

> Except as provided in R.S. 3525, if the maturity is accelerated for any reason and suit is filed, the obligation shall be credited with the same rebate as if prepayment in full had been made on the date of filing suit, thereafter the obligation sued upon shall be deemed to bear a loan finance charge or credit service charge on the amount due not to exceed the rate previously charged on the obligation.

The mode of rebate referred to is to be calculated under the Rule of 78's or the sum of the digits method. La.Rev. Stat. 9:3528. One Court has held that such a rebate does impose an additional charge upon a loan customer. *Scott v. Liberty Finance Co.,* 380 F.Supp. 475 (D.Neb., 1974). A comparison of rebates calculated by the Court and the Rule of 78's established that there was a sizeable error as to the latter method, resulting in additional cost being borne by the debtor.

A more detailed analysis of the Rule of 78's rebate scheme made by an actuary may be found in a recent law review article. J. Hunt, "The Rule of 78, Hidden Penalty in Prepayment in Consumer Credit Transactions," 55 Boston U.L.Rev. 331 (1975). The actuary first calculated a rebate according to the Rule of 78's and then by the actuarial or U. S. Rule, first laid down in *Story v. Livingston,* 13 Pet. 359, 370, 10 L.Ed. 200 (1839) and, with modifications, approved for use in credit transactions by 15 U.S.C. § 1606. The actuary demonstrated that the rebate given by the Rule of 78's was much smaller than that given by the actuarial method. This also was the finding of the Court in *Bone v. Hibernia Bank,* 493 F.2d 135, 137, 140 (9th Cir., 1974). A Louisiana debtor would be compelled to pay an additional charge equal to the rebated unearned finance charge. This is exactly what 15 U.S.C. § 1639(a)(4) and 12 C.F.R. § 226.8(b)(4) require to be disclosed: "default, delinquency or similar charges." Whether "charge" means either an obligation or an expenditure,[*] the loan customer should be informed that he is going to have to pay something in addition to the unpaid principal of the obligation. Bastrop Loan did not so inform plaintiff of this possible liability and thus violated the Act and Regulation Z.

*Fourth,* even if we accept the argument that acceleration of the defaulted loan does not impose a charge under 12 C.F.R. § 226.8(b)(4), the customer should be informed of the right of acceleration and its consequences under the requirement that there be a meaningful disclosure of the terms and conditions of the credit transaction:

> Beneficial need not disclose a right of acceleration as an additional "charge". However, such a right is an obvious concern to a borrower. The Act requires "meaningful disclosure". Henceforth, a creditor must disclose and fully explain any right of acceleration in order to comply with the "meaningful disclosure" standard of the Act.

*Woods v. Beneficial Finance Co.,* 395 F.Supp. 9, 16 (D.Ore., 1975).

*Fifth,* other cases which have considered this problem have found that dis-

[*] The definitive Oxford English Dictionary indicates that both meanings of the word are almost synonymous. 2 *Oxford English Dictionary, verbo* "Charge" (10, 11), p. 284 (1933).

closure of the acceleration clause is more in keeping with the expressed congressional purposes in enacting the Truth-in-Lending Act. See *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 364, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Mason v. General Finance Corp.,* 401 F.Supp. 782, 785 (E.D.Va., 1975); 15 U.S.C. § 1601.

In our ruling of December 30, 1975, we referred to *Barrett v. Vernie Jones Ford, Inc.,* 395 F.Supp. 904 (N.D.Ga., 1975) where the creditors earnestly argued that, because Georgia Courts would not enforce the collection of the unearned finance charge on an accelerated obligation, the requirement that such unearned monies be rebated did not make acceleration a "charge" under Regulation Z. The Georgia Court pointed out that the acceleration clause in the note made no provision for any rebate of the unearned portion of the future installments. 395 F.Supp. at 906–907. This also is the situation here.

As in Louisiana law, Georgia law holds that "if the effect of the acceleration clause is to render the note as a whole usurious, the note is unenforceable in the Georgia Courts. *Lewis v. Termplan, Inc.,* 124 Ga.App. 507, 184 S.E.2d 473 (1971)." *Id.,* at 907 (footnote omitted). After reviewing other Georgia decisions as to the enforceability *vel non* of loan contracts with acceleration provisions, the Court concluded:

> [T]he contract is unenforceable not because it contains an acceleration clause requiring payment of unearned interest but because the *effect* of that clause is to authorize the collection of usurious interest.

> The court is aware of no decisions holding that the fact that a note may ultimately be found to be usurious under the applicable state law insulates its maker from liability for any violations of the Truth in Lending Act which the note may contain. The purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. It appears evident to the court that effectuation of this congressional purpose requires disclosure of all charges which the lender asserts the right to collect at the time credit is extended whether or not it is finally determined that he can utilize the enforcement mechanisms of the state courts to collect the charge. Equally clearly, the consumer has a need to be informed of all charges which may be assessed against him whether or not he could prevail in any eventual litigation attacking the validity of that charge.

> The court thus concludes that, irrespective of how this acceleration clause might fare if an attempt was made to enforce it in the state courts, the Truth in Lending Act and its implementing regulation, 12 C.F.R. § 226.-8(b)(4), require that an acceleration clause be properly disclosed when, as here, by its terms it authorizes the creditor to demand immediate payment of future installments including unearned interest and finance charges upon default.

*Id.,* at 908 (footnote omitted; emphasis in original). In another decision construing Georgia law on acceleration, *McDaniel v. Fulton National Bank,* 395 F.Supp. 422 (N.D.Ga., 1975), the Court concluded:

> Of far more importance to the Court is the assertion by defendant that it has the ability to accelerate "all unpaid installments." Each installment to be paid by plaintiff included a portion of the principal amount and a portion of the total interest and other charges to be paid by the plaintiff over the total length of the note. By forcing plaintiff to pay the total amount of interest over a shorter period than was originally anticipated, defendant would be receiving a higher return on his money and effectively increasing the annual percentage rate of interest which is paid by plaintiff. The Court finds this to be a violation of § 226.8(b)(4) whether or not the defendant can en-

force this provision in the state courts of Georgia. The note contains an additional charge to the extent that acceleration effectively increases the true annual rate of interest of the note which had not been disclosed at the inception of the transaction.

This Court must construe acceleration clauses vis-a-vis the Truth-in-Lending Act, thus it must look at the agreement as of the date it was entered into. The purpose of the Act is not to usurp the State's historic function in determining what constitutes an enforceable agreement. It relates only to charges that the creditor claims the ability to make. As stated in the Act itself, its purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. In other words the purpose is to permit the consumer, with full knowledge of the costs involved, to make comparisons. *Burgess v. Charlottesville Savings and Loan Association,* 477 F.2d 40 (4th Cir. 1973).

In order to successfully compare credit terms, the consumer must be given notice as to each charge that the creditor asserts it can impose. If a creditor states that it can accelerate unearned interest, then certainly this is an added cost which the consumer should take into consideration in shopping for credit. However, the enforceability of a charge is a matter of state law to be determined at a later date by the state courts.

Thus, the effectuation of the Congressional purpose as set out in 15 U.S.C. § 1601 requires disclosure of all charges which the lender asserts a right to collect at the time credit is extended whether or not it is finally determined that he can utilize the enforcement mechanisms of the state courts to collect the charge. For instance, a loan agreement that on its face is usurious is not contrary to the Truth-in-Lending Act if all required disclosures have been made. A consumer could no more argue the invalidity of the contract under state law than defendant can argue the invalidity of acceleration of unearned interest in this case.

395 F.Supp. at 427–428.

For these reasons, we hereby reaffirm our earlier holding that non-disclosure of the acceleration clause violated 12 C.F.R. § 226.8(b)(4).